# BRADFORD v. MANNEY.

### No. 13975.

Court of Civil Appeals of Texas.
Fort Worth.
Oct. 20, 1939.

Rehearing Denied Dec. 1, 1939.

Clarence E. Farmer, of Fort Worth, for appellant.

Julien C. Hyer, of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

E. E. Manney employed B. R. Bradford to move a 14 Linotype printing machine with its auxiliary attachments from the office of the Turrentine Printing Company on Commerce Street, in the City of Fort Worth, to Manney's place of business in "Riverside", another place in the City. At the time of his said employment, Bradford was engaged in the general business of moving that and other kinds of merchandise from one location to another, under the trade name of Bradford Transfer Company, and employing trucks and workers for that purpose. His servants undertook to load the machine into a truck at the office of the Turrentine Printing Company, and in so doing permitted it to fall on the side-walk, resulting in its damaged condition. Later the machine was moved by the Fort Worth House Moving Company, employed by Manney.

E. E. Manney had bought the machine for a price of $2,500, and was having it moved to Riverside for use in his printing business in which he was there engaged. He instituted this suit against B. R. Bradford to recover damages for injuries to the machine, resulting from its fall on the sidewalk, as noted above. And from a judgment in his favor for $700, with costs of suit, the defendant has appealed.

Trial was before a jury and the following are the issues submitted with findings of the jury thereon:

"Question No. 1: Do you find from a preponderance of the evidence that the Linotype machine was damaged on the occasion in question? Answer yes or no.

"Answer: Yes.

"Question No. 2: If you have answered question No. 1 'yes' then answer the following question; otherwise you need not answer:

"From a preponderance of the evidence what amount of money, if any, if paid now in cash, would reasonably compensate the plaintiff for such damage, if any, to said linotype machine? Answer in dollars and cents, if any.

"Answer: $700.00."

The statement of facts agreed to by both parties shows the following:

"Counsel representing the respective parties hereto agreed to submit this case to the jury on the issues shown in the clerk's transcript."

In appellant's brief, as a part of his statement of the nature and result of the suit, this is said:

"There was no question as to the machine being damaged. The only question was, how much damage."

Then follow several propositions, presenting the contention that the damages awarded by the jury were excessive and that the trial court erred in overruling defendant's motion for new trial, by reason thereof.

Plaintiff Manney testified that the machine had been in use since the year 1926; he had just bought it for $2,500; the date of the trial being September 15, 1938; he had been in the printing business for 25 years, during which time he had worked

with linotype printing machines and was familiar with their construction; such machines are very intricate and said to include more than 10,000 working parts; this machine weighed 4,500 to 5,000 pounds; the cost of new parts to replace those broken would be about $90 and cost of labor for replacement would be about $40. He further testified as follows:

"That was just the parts that were actually broken. The machine was knocked completely out of line when it fell, and we have had to have a great deal of labor in order to get the alignment so that we could get any service at all. The machine should be knocked down and reassembled. The adjustments are very fine, and the fall of the machine has affected the mechanism so that we have had a good deal of trouble with it for more than a year. I think that $750.00 would be the usual and reasonable cost of dissembling the machine and replacing these parts that have been knocked out of line, in order to put it in the same shape as it was before.

"In my opinion as an expert, I would say that because of its fall the machine has been damaged $750.00 worth, in addition to these parts. The list price on that machine, with its auxiliary equipment, is $9,-200.00. It might be a little higher than that.

\* \* \* \* \* \*

"The difference in the market value of this machine immediately prior to its falling and immediately after it fell on the sidewalk, while being moved by these people, is about $900.00. I base that upon the cost of replacing the parts actually broken, the dissembling and reassembling of the machine to make its intricate parts work properly and the cost of the labor in connection with that, the loss of time and production incident to that, and in addition to that, the resale value of the machine would be materially lessened. My opinion is that it would be difficult to get anything like a reasonable price out of any linotype machine that had been dropped. Based upon $90.00 for parts, $40.00 for labor, and $750.00, it would be $882.00, and figuring it the other way, it would figure about $900.00 difference in market value, as I figure it.

\* \* \* \* \* \*

"An automobile a year old is an old car, but a linotype machine does not depreciate like other machines. I paid $2,500.00 for the machine, but I did not pay cash for it."

Carl Eckholm, a disinterested witness, testified:

"I work for the Star Telegram in the mechanical department. I am chief machinist in the linotype department. I have been dealing with linotype machines since 1902, about thirty-six years. The Star Telegram printing department has about twenty-two linotype machines.

"I have known Mr. Manney since he bought that machine. I was familiar with the machine down at William's place. I had known the machine some time. When I went down there to disconnect the machine, it was a good machine, in good workable running condition. Mr. Manney paid me a small sum, I believe something like $2.50, for disconnecting the machine and connecting it again over in Riverside.

\* \* \* \* \* \*

"I went over to Riverside and worked on the machine until about two o'clock in the morning. I finally got it to running after a fashion, but not right. I had occasion to see what parts needed repairing or replacing on the machine. I told Mr. Manney that it would take about $100.00 worth of new parts. I would have to put in a new bracket, and the reasonable and customary charge·for that work would be about $15.00. After you get the bracket on, it wouldn't take very long then to install the other parts, about three or four hours. I would put the other parts on for about $25.00.

"From my thirty-six years of experience in working with linotype machines, it is my opinion that no machine can be dropped that far, breaking a great big shaft like that, and breaking the base, and still be in the same shape after it is repaired as it was before it was dropped. The only way you could do it would be to dissemble the whole thing and put new dowell pins in it, and put a new magazine on for the one that was bent, and put new parts all the way through, is the only way I could guarantee that the machine would be in perfect condition like it was before it was turned over. Just like an automobile. It would be awfully hard to tell you what the cost would be to put it back in that condition. After a machine has been turned over, you can't sell it to anybody that knows it had been turned over. They won't buy it. Based upon my experience of thirty-six years in handling these machines and seeing them bought and sold, I would say that the difference in market value of that machine immediately before it hit the sidewalk and immediately after it hit the sidewalk, before

it was repaired, was $800.00 to $900.00 or $1,000.00. I believe that if you take the sale value of the machine, that is what the difference would be. As to the difference in value after the machine had been taken down and put back together, it is hard to judge, unless you go into it. I would rather not pledge myself on that question technically. The sale value of the machine was about $900.00 less after it was turned over than it was before."

■ Plaintiff and Eckholm were the only witnesses offered to prove the difference in the market value of the machine before and after its injury; and it cannot be said, as insisted by appellant, that it was insufficient to support the finding of the jury that the machine was damaged to the extent of $700. That was a measure of damages alleged in the petition, to which defendant did not except; and furthermore, as shown above, he agreed on the trial that the issues were correctly submitted to the jury.

■ It is well settled by the Constitution, Statutes and decisions of the appellate courts of this State that it is the exclusive province of the jury to determine issues of fact upon conflicting evidence or upon evidence which is open to diverse inferences. 41 Tex.Jur., sect. 164, p. 933, sect. 168, p. 938, sect. 170, p. 940. And that the Courts of Civil Appeals are without power to set aside the findings of the jury on disputed issues of fact, unless the evidence so manifestly preponderates against such findings as to show that they were the result of bias in favor of the winning party, or prejudice against the losing party. 41 Tex.Jur., sect. 764, p. 1088 et seq.

As shown above, the testimony introduced, showing the depreciation in the value of the machine by its fall on the sidewalk, ·was undisputed; and under the authorities cited, all assignments of error to the finding of the jury that it was damaged thereby in the sum of $700 are overruled. San Antonio & A. P. R. Co. v. Parr, Tex.Civ.App., 26 S.W. 861; Harlingen v. Scroggins, Tex. Civ.App., 121 S.W.2d 408.

Another assignment is presented to the refusal of the court to set aside the judgment and grant a new trial, in order to give defendant an opportunity to introduce newly discovered evidence. The portion of the motion for new trial on that ground reads:

"Plaintiff has newly discovered evidence to be produced by witnesses with testimony that was not known to the defendant at the time of the trial nor theretofore but has since been brought to his attention. The tenor of the newly discovered evidence is that the plaintiff ordered the linotype handled the way it was when it was damaged and that this was done at the direction of the plaintiff and this was the proximate cause of the damage. That this evidence will be given by Mr. V. Watson and Mr. Fisher. Plaintiff has made use of the machine since that damage was done and that without even the repairs that were shown on the trial of this cause to be necessary, and that even on the night of the day of the alleged damage it was used and is now in good running order."

■ In the first place, only the "tenor of the newly discovered evidence" is alleged and not the facts on which that legal conclusion is based. Watts v. Texas Employers', Tex.Civ.App., 264 S.W. 186.

■ In the second place, there is no showing that the failure to procure it at the trial was not due to a lack of diligence on the part of the defendant. Dutton v. Kinsey, Tex.Civ.App., 124 S.W.2d 446; McDonald v. Lastinger, Tex.Civ.App., 214 S. W. 829.

■ In the third place, affidavits of the witnesses referred to of the facts sought to be proved by them are not attached to the motion. Cherbonnier v. Shirley, Tex. Civ.App., 185 S.W. 641.

■ Nor is the motion for new trial verified by defendant, or anyone authorized to speak in his behalf. Neal Commission Co. v. Golston, Tex.Civ.App., 197 S.W. 1124. Moreover, it appears from the statement of facts that V. Watson, one of the witnesses for whose testimony a new trial was desired, testified on the trial and no excuse is offered for failure to interrogate him on the point now sought to be brought out on a new trial.

For each of those reasons, there is no merit in the assignment now under discussion.

Accordingly, the judgment of the trial court is affirmed.