The STATE of Texas, Appellant,

v.

H. P. BAXTER, Jr., et al., Appellees.

No. 4714.

Court of Civil Appeals of Texas.

Waco.

July 11, 1968.

Rehearing Denied Aug. 1, 1968.

Crawford Martin, Atty. Gen., Austin, Ben M. Harrison, Asst. Atty. Gen., for appellant.

Seymour Lieberman, Houston, Vance Dunnam, Waco, Bob Casey, Jr., Houston, for appellees.

OPINION

WILSON, Justice.

This is a trespass to try title action. We adopt the State's statement of the case.

Stephen F. Austin, appellee's predecessor in title, received from the Mexican Government a grant of land in 1830 including two labors, (approximately 355 acres) situated on the left margin of the Colorado River where it empties into Matagorda Bay.

Appellees claim that the original Stephen F. Austin Survey comprising approximately 355 acres, now contains 4505.45 acres from accretion into Matagorda Bay. The State claims that this is not true, and filed this suit to recover the land (located in Matagorda Bay, across the Intracoastal Waterway from the Stephen F. Austin Survey, comprising 4000 acres, more or less) as being a part of the public domain never having been appropriated by grant or patent.

The State contends "that the land in question is not accretion to the original Stephen F. Austin Survey through the operation of natural causes; but that the land in controversy began as islands in Matagorda Bay, and much or all of it is still islands; that these islands were formed in Matagorda Bay by the work of man, and were not accretion from the original shore to the islands."

The jury answered in effect: (1) the land in question was created by accretion; (3) the accretion began at the original line of the shore, and (4) extended the surface of the land from the landward shore lines to its present boundaries; (5) that

the extension of the surface is all above the line of mean higher-high tide.

The State's first point is that the verdict of the jury is contrary to the overwhelming preponderance of the evidence.[1] It is contended the evidence is factually and legally inadequate to sustain the verdict.

■ We have carefully considered the contention, and it is overruled. The State introduced convincing evidence in the form of photographs, maps, expert opinion and lay evidence that the land in question, or most of it, was covered by the waters of Matagorda Bay until 1920; that it contained only 1495 acres in 1926, but increased to an area of over 4500 acres by 1936; that although it increased only two acres per year from 1830 (the year of Austin's grant) to 1918, it increased at the rate of 100 acres per year from 1918 to 1926; that the increase was the result of a filling or build-up of flats from and between islands in the bay, and was from the floor of Matagorda Bay—not from the shore; that the deposits which created the land resulted from the 1925–1929 removal from the Colorado River of a chain of "rafts" extending 15 or 20 miles composed of compacted logs, snags, debris and silt, which had previously choked the river; that release of the accumulated material composing these rafts caused the silt to be carried to the mouth of the river and deposited in the bay over a relatively brief interval, perhaps as short as two years; and that dredging operations in the bay created spoil banks creating a series of islands which, with other existing "islands", caught the material discharged by the river flow. There was ample evidence

that the land involved was created by the aid of artificial means during a brief time, and that it grew from the bay to the shore.

Appellees' evidence was equally forceful that the growth was gradual; that the land increased in area as a delta from the original shore outward; that the material in the raft itself had accumulated naturally over many years, and was carried by natural forces downstream when released; that sediment attached itself to the Austin Survey so slowly that the process was imperceptible; that the survey had increased to over 700 acres in 1918, without "islands"; that 1400 acres had been added from the shore by accretion, before the chain of rafts had been destroyed, as a result of the discharge of silt carried by the river to its mouth; that over 780 acres had been added in an eight-year period before removal of the rafts and the aggregate area had increased to 1495 acres by 1926 while the raft was intact. There was expert opinion testimony to the effect that the increase in area was very slow, gradual and imperceptible, and that much of it occurred beneath the surface before the delta became observable above the water.

We are unable to conclude that the evidence was not adequate to support the findings of the jury, and the State's contentions are overruled.

Refusal of a requested definition and eleven requested special issues is complained of. The charge defined "accretion" as "the gradual and imperceptible depositing by water of solid matter through the operation of natural causes."[2] Appellant requested submission of a definition of the term "natural causes", as meaning

---

1. The controlling principles governing determination of the ownership of the land in question are announced and exhaustively treated in such cases as the following, and we have purposely avoided extending this opinion by repeating them: State v. Balli, 144 Tex. 195, 190 S.W.2d 71, cert. den.; Lorino v. Crawford Packing Co., 142 Tex. 51, 175 S.W.2d 410; Giles v. Basore, 154 Tex. 366, 278 S.W.

2d 830; Luttes v. State, 159 Tex. 500, 324 S.W.2d 167; Humble Oil & Refining Co. v. Sun Oil Co., 5 Cir., 190 F.2d 191, rehearing den. 191 F.2d 705, and authorities cited.

2. The court apparently utilized the definition of "accretion" in Giles v. Basore, 154 Tex. 366, 278 S.W.2d 830, 835.

"causes that are independent of and unassisted by, to any substantial degree, man made acts."

 The court is not required, under Rule 277, Texas Rules of Civil Procedure, to define terms of ordinary meaning; but only legal terms. Magnolia Petroleum Co. v. Long, 126 Tex. 195, 86 S.W.2d 450, 455; Pritchett v. Highway Insurance Underwriters, 158 Tex. 116, 309 S.W.2d 46, 49. "Natural" is not a legal term, but one of ordinary meaning. The requested definition would have only told the jury in effect, that "natural" causes did not include causes which were not natural, and would have unduly emphasized the State's evidentiary position. It was not reversible error to refuse the definition.

The refused issues requested would have inquired (8–10) whether each portion of the delta began its formation as a series of islands formed by deposit of material arising from the bay floor; (11) whether at the time an aerial survey was made in 1930, the delta consisted of islands and surrounding water; (12) whether "man-made acts substantially contributed to the removal of the raft from the Colorado River into Matagorda Bay"; (13–16) whether removal of the rafts, dredging, and building of a highway "substantially contributed to the build-up" of the delta; and (17, 18) whether, without any "made-made acts" found to contribute, the size and "the shape of the delta" would "have been greatly altered."

Requested issues 8–10 and 12–18 would have simply submitted the negative or opposite of the issues submitted by the court as to which the burden of proof was imposed on appellees. The court was not required to submit the requested issues under the provisions of Rule 279. These were not independent grounds of recovery; they were in rebuttal of defendants' theory of defense. It was not error to refuse them. Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, 316.

Requested Issue 11 is evidentiary, and was correctly refused.

Appellant's other points have been considered fully and are overruled.

Affirmed.