**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellant,**

v.

**Margaret Louise MILLER, Appellee.**

**No. 6100.**

Court of Civil Appeals of Texas, Waco.

Feb. 29, 1980.

J. W. Payne, DeHay & Blanchard, Dallas, for appellant.

H. Guy Smith, McMullen & Porter, P. C., Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a Worker's Compensation case. Appellant, Texas Employers Insurance Association (T.E.I.A.) filed this suit against Appellee, Margaret Louise Miller, individually and as representative of the estate of Morris Lee Miller, in appeal of an award by the Texas Industrial Accident Board of Worker's Compensation death benefits to Margaret Louise Miller, the sole surviving legal beneficiary of Morris Miller. Defendant-Appellee, Mrs. Miller denied T.E.I.A.'s claim and counterclaimed, individually and on behalf of the estate of her deceased husband to recover the death benefits under the Worker's Compensation laws of Texas.

Morris Lee Miller, deceased husband of Mrs. Margaret Louise Miller, was initially employed by the Florence Drane Estate in 1958. At that time the Estate operated several dairy farms in and around Corsicana, Texas, and Mr. Miller's duties included milking cows, feeding cattle, and generally

tending to odd jobs on one of the dairy farms. Shortly after Mr. Miller began working for the Drane Estate, he and his wife moved into a house on the property where they remained until his death on December 18, 1976. Mrs. Miller did not move out of the place until more than a month after Mr. Miller's death. As part of Mr. Miller's compensation, the Millers were allowed to live rent-free in the house and the Drane Estate also paid part of the utility bills for the house.

In the early 1970's, the dairy operation was phased out, the farm staff was reduced, and Mr. Miller's duties were changed so that he was primarily responsible for the maintenance and cleaning of the property. At the time of his death Mr. Miller's responsibilities and time spent on the job were even more diminished since he had become eligible for Social Security benefits and his employer had agreed to employ him on a limited basis so his income would not exceed that allowable under Social Security regulations. Mr. Miller's total pay for the year 1976 was $2,290, computed at a base rate of $2.00 per hour.

Beginning in 1970, and continuing until his death, Mr. Miller's most routine job was collecting and burning the trash that had accumulated on the property. Every Saturday morning, weather permitting, Mr. Miller would customarily collect all the trash on the premises in a pickup truck and haul the trash to a pit located on the farm especially built for burning the trash, where he would burn all the week's trash.

Mr. Miller had, for many years, suffered from Parkinson's disease which caused his left arm to shake. This tremor became more severe and debilitating as he aged. The tremor had begun to interfere substantially with his work. In December of 1976, Mr. Miller informed Mr. Lee (his foreman) that he was going to go to Ft. Worth to have brain surgery to relieve the Parkinsonian tremor. On Monday, December 13, 1976, a right thalamotomy was performed on Mr. Miller. The surgery, performed under local anesthetic, consisted of 1) making a small incision in the scalp, 2) drilling a "burr hole" through the skull, 3) lowering an electrode into the brain and destroying a small portion of brain tissue wherein the tremor supposedly originated. Mr. Miller recovered well from the surgery and returned home to the Drane Estate on Thursday, December 16, 1976. Mr. Miller spoke to his foreman, Mr. Lee, on Friday night, December 17, 1976, whereupon Mr. Lee told him (Mr. Miller) not to worry about work, because the Drane's yard man had agreed to take over Miller's duties until the doctor said he could return to work.

Early Saturday morning about 7:30 a. m., December 18, 1976, when Mr. Lee arrived at the farm, he found Mr. Miller's body lying in the pit where trash was normally burned. Although there was no fire at that time, and the site was cool, Mr. Miller's body had been extensively burned and an autopsy revealed damage to the lungs resulting from smoke inhalation. Mr. Lee also found that the offices had been cleaned, the trash had been collected and had apparently been burned. Although Mr. Miller usually went to work at about 7:30 on Saturday morning, Mrs. Miller said that on this occasion he had been very restless and had left the house at about 2:00 a. m. Saturday morning and that, to her knowledge, he had never returned.

The primary disputes in this case centered around the questions of 1) whether or not Mr. Miller was an "employee" at the time of his death, and 2) whether Mr. Miller had sustained an injury in the course and scope of his employment which was a producing cause of his death.

Trial was to a jury which found that:

1) Morris Lee Miller received an injury on or about December 18, 1976;

2) at the time of receiving such injury Mr. Miller was an employee of the Drane Estate;

3) Morris Lee Miller received such injury in the course of his employment by Florence Drane Estate;

4) such injury was a producing cause of the death of Morris Lee Miller;

5) Morris Lee Miller's average weekly wage as of December 18, 1976, which would be just and fair to both Plaintiffs and Defendant was $75.00; and

6) the amount of expenses incurred by Margaret Miller for the funeral and burial of Morris Lee Miller was $1,662.00.

Pursuant to and in harmony with the jury verdict, the trial court entered judgment in favor of Appellee Mrs. Miller against Appellant T.E.I.A. for maximum death benefits to a widow as provided by Art. 8306, Sec. 8, Vernon's Texas Civil Statutes, based upon the $75.00 average weekly wage for Mr. Miller as found by the jury. Attorney's fees in the amount of 25% of the total amount due and to become due to Appellee Mrs. Miller were allowed Appellee's attorneys, payable to such attorneys in a lump sum. The net accumulated benefits due Mrs. Miller from the date of Mr. Miller's death to the date of judgment were payable to Mrs. Miller in a lump sum, and future net benefits due Mrs. Miller were payable to her weekly until her death, together with appropriate provisions in the event of her remarriage.

T.E.I.A. appeals on seven points of error, the first three of which complain that there was no evidence, or in the alternative insufficient evidence to support the jury's findings to special issues Nos. 1, 2, 3, and 4. Appellant primarily attacks these findings insofar as they relate to the questions of 1) whether Mr. Miller was an "employee" of the Drane Estate at the time of his death and 2) whether Mr. Miller's death resulted from an injury which occurred in the scope of his employment. We hold that the evidence and the inferences reasonably deducible from the evidence amply support the jury's verdict.

■ With regard to the question of "employment," the evidence showed that 1) Mr. Miller had been employed by the Drane Estate since 1958, 2) that his remuneration for his job included wages and rent-free living quarters, 3) that he left the farm to enter the hospital for surgery but had returned to the farm only four days thereafter, 4) that Mr. Miller was, at the time of his death, still receiving at least part of his remuneration in that he was still living rent-free on the farm premises. Although rebuttal testimony of Mr. Lee and Dr. Drane indicated that they "did not consider Mr. Miller an 'employee' at the time of his death" and that Mr. Lee had asked the yard man to take over Miller's duties during his illness, such rebuttal testimony merely presented a fact issue and the jury could reasonably have decided that Mr. Miller continued in the employ of the Drane Estate at the time of his death.

■ With regard to the question of "injury in the scope of employment," the evidence showed that 1) it was a regular part of Mr. Miller's duties to collect and burn trash on Saturday morning; 2) Mr. Miller died on Saturday morning; 3) his body was found lying in the trash pit where the trash was burned; 4) the trash had been collected and burned probably earlier that morning; 5) the autopsy of Mr. Miller's body indicated that Mr. Miller had suffered severe smoke inhalation; 6) Mr. Miller's body was badly burned; and 7) in the opinion of the pathologist performing the autopsy Mr. Miller's death resulted from the smoke inhalation. Rebuttal evidence showed that Mr. Miller normally burned the trash at about 7:30 a. m., but on this occasion the trash was burned much earlier and Mr. Miller had left his house at 2:00 o'clock in the morning on the day of his death. Appellant also attempted to show that death could have resulted from Miller's prior brain surgery. Again such rebuttal evidence merely presented a fact issue and the evidence was ample for the jury to legitimately infer that Mr. Miller was, as usual, burning trash on Saturday morning, that he was overcome by the smoke of the fire, that he lost consciousness, falling into the fire, and that thereafter he died.

Having found the evidence to be both legally and factually sufficient to support the jury's findings, we overrule Appellant's Points Nos. 1, 2, and 3. For a similar fact situation wherein the court affirmed a similar jury verdict, see *Western Casualty & Surety Co. v. Carlson* (San Antonio Tex.Civ. App.1958) 317 S.W.2d 259, NRE.

■ Appellant's Point No. 4 urges that the trial court erred in submitting Special Issue No. 5 regarding Miller's "just and fair wage rate." Appellant argues that "just and fair wage rate" cannot be used as a measure of "average weekly wage" under Art. 8309, Sec. 1 unless a claimant first proves that the "average weekly wage" could not be computed under the first two methods of computation provided in the definition of "average weekly wages" in said statute. Appellant relies on *Aetna Insurance Co. v. Giddens,* 476 S.W.2d 664 (Tex.1972). While we agree with Appellant's presentation of the law, we find that in this case it was undisputed and that the evidence conclusively established that the first two methods of computation under Art. 8309, Sec. 1 were not applicable and that the third definition of "average weekly wages" under the statute had to be relied on by the claimant.

Art. 8309, Sec. 1 provides the following three methods of computing "Average weekly wages":

"(1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, for at least two hundred ten (210) days of the year immediately preceding the injury, his average weekly wage shall consist of three hundred (300) times the average daily wage or salary which he shall have earned during the days that he actually worked in such year, divided by fifty-two (52)."

"(2) If the injured employee shall not have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, for at least two hundred ten (210) days of the year immediately preceding the injury, his average weekly wage shall consist of three hundred (300) times the average daily wage or salary which an employee of the same class, working at least two hundred ten (210) days of such immediately preceding year, in the same or in a similar employment, in the same or a neighboring place, shall have earned during the days that he actually worked in such year, divided by fifty-two (52).

"(3) When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above Subsections 1 and 2, or other good and sufficient reasons, it is impracticable to compute the average weekly wages as above defined, it shall be computed by the Board in any manner which may seem just and fair to both parties, as of the date of the injury."

In the instant case, in response to Appellee's Request for Admissions under Rule 169, Tex.Rules Civ.Pro., the Appellant denied "That Morris Lee Miller had worked in the same employment for the said employer for at least 210 days of the year immediately preceding said date," and also denied "That there were one or more employees of the same class as deceased who worked at least 210 days of the year immediately preceding the said date, in the same or a similar employment, and in the same or a neighboring place to where deceased was working on said date." Moreover, the evidence is undisputed that Mr. Miller did not work as much as 210 days during the year immediately preceding the injury, or that there was any employee of the same class who so worked.

■ One purpose of Rule 169, T.R.C.P., is to avoid the necessity of proving facts which are not controverted. *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.,* 490 S.W.2d 818 (Tex. 1972). Further, uncontroverted issues need not be submitted to the jury by the trial court.

In Appellant's responses to the Request for Admissions, Appellant essentially admitted that "average weekly wages" could not be computed under the first two methods provided by Art. 8309, Sec. 1. Thus, the trial court properly submitted only the issue inquiring as to the "just and fair wage rate." Appellant's Point No. 4 is therefore overruled.

■ Appellant's fifth point of error concerns the trial court's refusal to submit

instructions relating to injury and death in the course of employment. We are of the opinion that the court did not err in refusing these additional instructions. Rule 277, T.R.C.P., provides in part that "the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict." The definitions submitted by the trial court in this case adequately covered the requested issues and Appellant's requested additional instructions were not necessary to enable the jury to properly answer the issues propounded.

■ Appellant's Point No. 6 asserts that the trial court erred in awarding lump sum attorney's fees based on unaccrued compensation benefits. The gist of Appellant's argument is that "there is no statutory authority for the awarding of lump sum attorney's fees" when such fees are by statute based on future compensation benefits. Appellant has not attacked the trial court's basis or method of computing the present value of unaccrued benefits but rather has challenged the propriety of *any* lump sum award of attorney's fees in a "death benefits" case. Appellant relies on Art. 8306, Sec. 7d and Sec. 8 as statutory authority for precluding such a lump sum award.

Our Supreme Court approved an award of lump sum attorney's fees under Art. 8306, Sec. 7d in *Texas Employers' Insurance Association v. Motley*, 491 S.W.2d 395 (Tex. 1973), reasoning that: ". . . there is a restriction as to what the *Board* can do in awarding attorney's fees which was not placed by the Legislature in its authorization of the *court* to act. The Board, in these circumstances, can only approve the amount of weekly payments to the attorney. The statute, Section 7d, authorizes the court to 'fix and allow' such fees without the restriction as to such periodic installments. . . . Since the Legislature has not restricted the trial court in the handling of attorney's fees as it did the Industrial Accident Board, we hold that the trial court had the power and the discretion to order a lump sum payment by the insurance company of the attorney's fees." Moreover, our

Supreme Court further said in *Motley*: "The attorney's fee allowed . . . is a matter pertaining only to the claimant and his attorney, and it is ordinarily of no concern to the insurance carrier, and is particularly within the discretion of the trial court." Art. 8306, Sec. 7d has not been amended since the *Motley* decision.

Since the amount of attorney's fees is, by statute, limited to 25% of the "amount recovered," Appellant argues that Art. 8306, Sec. 8, which sets the "amount recoverable", limits the court's discretion in awarding lump sum attorney's fees and further that the 1973 amendment to Sec. 8 virtually precludes an award of lump sum attorney's fees in cases involving death benefits.

Prior to September 1, 1973, Art. 8306, Sec. 8 benefits to a surviving spouse were limited to weekly payments for a period of 360 weeks from the date of the injury. Once the amount of the weekly payment was set by judgment of the court, the total amount recoverable was definite and invariable and a 25% maximum attorney's fee was ascertainable. In 1973, the Legislature amended Art. 8306, Sec. 8 to provide payment of death benefits to a surviving spouse by weekly payments to be "continued until the death or remarriage of the beneficiary." Appellant argues that under this amended version of Art. 8306, Sec. 8, the total amount of death benefits "recovered" cannot be definitely ascertained since the total amount of the payments is dependent on the time that the beneficiary survives or remains unmarried. Thus, Appellant argues, the lump sum value of the attorney's fees cannot be ascertained since the "amount recovered" cannot be ascertained.

This same argument has already been presented to and rejected by two other courts of civil appeals. *Liberty Mutual Insurance Company v. Ramos* (El Paso Tex. Civ.App.1976) 543 S.W.2d 392, no writ; *Texas Employers' Insurance Association v. Flores* (Ft. Worth Tex.Civ.App.1978) 564 S.W.2d 831, NRE. We too do not believe that the indefinite nature of the death benefit award precludes the award of lump sum attorney's fees.

When Art. 8306, Sec. 8 was amended in 1973, the Legislature saw fit to expressly allow lump sum awards of benefits to beneficiaries in two instances. In the language of the Act:

"The benefits payable to a widow, widower, or children under this section shall not be paid in a lump sum except in events of remarriage or *in case of bona fide disputes as the liability of the association for the death.*" Art. 8306, Sec. 8(d). (emphasis supplied).

Our Supreme Court has recently recognized the propriety of lump sum awards of death benefits in *Twin City Fire Insurance Co. v. Cortez*, 576 S.W.2d 786 (Tex.1978). The court dismissed the indefinite nature of calculating the award, stating that:

"The Legislature itself, in creating special limitations on original lump sum awards in death benefits cases, specifically allows original lump sum awards when there is a bona fide dispute as to liability. Thus, . . . both the Board and the courts may face the problem of calculating an award based on the life and remarriage expectancy of a widow or widower. The means of calculating the remarriage expectancy of a widow or widower admittedly create problems for the Board and for the courts. Nevertheless, the Legislature has expressly provided that lump sums of death benefits may be awarded when liability is disputed . . . The fact that the Legislature has provided no specific guidelines for calculating remarriage expectancy in the event of a lump sum award is no basis for refusing to award a lump sum when the propriety of such an award is specifically provided for by an Act." at p. 790.

In the case at bar, the liability of the compensation insurance carrier was definitely disputed. The carrier brought suit appealing an award by the Industrial Accident Board. Since Art. 8306, Sec. 8 expressly allows lump sum awards of benefits in cases of disputed liability, we cannot see how an award of lump sum attorney's fees could be improper in such a case. Appellant's Point No. 6 is therefore overruled.

Appellant's final point of error asserts that the trial court erred in overruling its motion for new trial because of jury misconduct during its deliberations. At the hearing had on the motion for new trial one of the jurors testified that the jurors had discussed the relative wealth of the parties to the suit and that their determination of the issues was based on this factor. She also testified that several jurors had related their own personal experiences regarding the issues posed during the deliberations. However, five other jurors testified at the hearing, each stating that the wealth of the parties was never discussed. Although some of the five did recall instances of discussions of personal experiences, all five testified that these discussions took place after the panel had been polled regarding their answers to the issues. All testified that there had always been ten or more jurors agreeing on the answers to the issues before these discussions occurred. Apparently the jury mistakenly thought that a unanimous verdict was required and these discussions occurred while the jury was seeking this unanimity.

■ The law is well settled that one complaining of jury misconduct has the burden to prove the overt act of misconduct, that it was material misconduct and that "from the record as a whole that injury probably resulted." Rule 327; *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969). The trial court's order overruling the motion for new trial impliedly found that misconduct did not occur, since it contained no express finding of misconduct. Further, in our opinion Appellant did not discharge its burden of showing probable harm in this case and Appellant's seventh point of error is therefore overruled.

Having carefully considered all of Appellant's points and finding no reversible error, we affirm the judgment of the trial court.

AFFIRMED.