**CITY OF TERRELL, Appellant,**

v.

**Lee McFARLAND, Individually and d/b/a Lee's Silver Fox, Appellee.**

No. 05–87–01385–CV.

Court of Appeals of Texas, Dallas.

Dec. 30, 1988.

Rehearing Denied Feb. 28, 1989.

William Charles Bundren, Dallas, for appellant.

D. Bradley Dickinson, W. Bruce Monning, Dena L. Mathis, Dallas, for appellee.

Before STEPHENS, BAKER and THOMAS, JJ.

BAKER, Justice.

The City of Terrell, Texas, appeals from an adverse judgment in a breach of contract suit brought by Lee McFarland. The city has raised nine points of error. We overrule points one through seven and sustain points eight and nine which concern McFarland's award of attorney's fees and postjudgment interest on those fees. We reform the trial court's judgment by deleting the attorney's fees awarded McFarland and the postjudgment interest on those fees; and, as reformed, we affirm the judgment.

The facts are disputed. The trial was hotly contested. McFarland alleged that he requested the city council to approve a reimbursement of a fifty percent pro rata

refund of his costs for constructing water and sewer lines to his property. He contended that the city council, by official vote, agreed to such a refund if anyone later tied onto the lines built by McFarland. The city, on the other hand, argued that there was no council vote and there was no contract. McFarland contended that a letter signed by the city manager and the mayor, addressed to McFarland, is written evidence of the contract. In pertinent part, the letter states:

In consideration of the construction of these lines at your expense, and the ownership becoming vested in the City of Terrell, this letter evidences the agreement by the City to collect from any person who elects to connect to such lines a prorata share of your total cost of construction according to city ordinances. This amount will be refunded to you.

The minutes of city council meetings do not reflect a vote on an agreement. The agendas of council meetings do not indicate that a refund was to be discussed. A tape recording of the August 11, 1981, city council meeting produced at trial by the city had obvious gaps in it and did not contain any evidence of a vote for a refund. Testimony by witnesses regarding any vote on a refund was conflicting.

The case was submitted to the jury in one question. The question asked:

Do you find from a preponderance of the evidence that in the summer of 1981 the Terrell City Council voted to collect for Lee McFarland a 50% pro rata refund for the cost of line installation in the event another tied onto said line?

The jury answered unanimously, "We do."

In its first two points of error, the city asserts that there is no evidence of a contract and that there is no evidence that the city council voted to collect a fifty percent refund. In ruling upon "no evidence" points, we consider only the evidence and inferences tending to support the jury finding, disregarding all evidence and inferences to the contrary. *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986). The record reflects that there is evidence supporting the jury's finding. The letter referred to above is some evidence that there was an agreement or contract. Among those who testified that there was an agreement entered into by a vote of the city council were McFarland, Jim Gordon, a contractor who did work for McFarland, and Odise Mashburn, a city councilman during the summer of 1981. The same three witnesses also testified that McFarland was to be refunded fifty percent of his costs or that a pro rata share meant fifty percent of his costs. We overrule points one and two.

In its third point of error, the city contends that the evidence is factually insufficient to support the jury's finding that the city council voted to collect a fifty percent refund for McFarland. The city filed a Motion to Modify Judgment which the trial court considered, in substance, as a motion for new trial. In its motion, the city did not raise the factual insufficiency argument that it now asserts on appeal. The city has waived any error regarding factual sufficiency. *See* TEX.R.CIV.P. 324(b)(2); *Garrett v. Standard Fire Insurance Co.*, 541 S.W.2d 635, 638 (Tex.Civ. App.—Beaumont 1976, writ ref'd n.r.e.). We overrule the city's third point of error.

The city contends in its fourth point of error that the trial court erred in entering judgment for McFarland because the alleged contract was illegal. Illegality as a defense must be affirmatively pleaded unless the illegal nature of the document sought to be enforced is apparent from the plaintiff's pleadings. *Lewkowicz v. El Paso Apparel Corp.*, 625 S.W.2d 301, 303 (Tex.1981); *see* TEX.R.CIV.P. 94. An examination of the city's pleadings reveals that the defense of illegality was not specifically pleaded. A careful reading of McFarland's pleadings, including the letter relied on and attached thereto, furnishes no facial indication that the alleged contract is illegal. Moreover, in its motion for directed verdict, the city stated that "[i]t is not the City's position that the contract was illegal but simply that a contract was not entered into." We overrule the city's fourth point.

■ In its fifth point of error, the city contends that the trial court erred in not submitting a question purportedly requested by the city. The question is filed as part of the record in this case, but there is no indication that the city requested its submission. Also, the record does not indicate that the city obtained a ruling on its alleged request. Rule 276 of the Texas Rules of Civil Procedure provides that when a question is requested and refused, the judge must endorse on the question "Refused" and sign it officially. When the record does not reflect that this was done, no error is shown even though the question may appear in the transcript. *Cambridge Mutual Fire Insurance Co. v. Newton*, 638 S.W.2d 75, 80 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *see* TEX.R.CIV.P. 276. We overrule the city's fifth point.

The city argues in its sixth point of error that the trial court erred in submitting Special Issue Number 1 to the jury. The city objected that the reference in the question to the summer of 1981 was too broad in scope. The short answer to this objection is that the summer of 1981 is consistent with McFarland's pleadings and the evidence at trial. The city also requested that the words "pro rata" be removed from the question. McFarland's pleadings alleged that "pro rata" meant fifty percent in the context of this case. There was evidence at trial that "pro rata" meant fifty percent. The letter relied on by McFarland contained the term "prorata." Therefore, no error is shown. *See* TEX.R.CIV.P. 278.

■ The city further objected to the jury question because of a distinction between service line connections and main line extensions. The city regards this distinction as crucial because it contended at trial that city ordinances authorized a refund only in cases of service line connections. The city engineer testified that the connections to McFarland's lines were main line extensions. This testimony was uncontradicted. It will be assumed here that the city objected to the question's failure to make this distinction even though the city's objection is by no means clear in this regard.

In his Fourth Amended Petition, McFarland does not plead the distinction between service line connections and main line extensions that the city regards as so important. McFarland merely alleges that the lines connected to his lines are within the city ordinance definition of service lines. His petition does not preclude the possibility that the water and sewer lines connected to his lines could be defined as both service lines and main lines. In other words, McFarland's pleadings do not say that the lines connected to his lines were *not* main lines; they only say that they *are* service lines as defined by the city ordinance. Neither McFarland's pleadings nor his evidence assert that the definitions of main lines and service lines are mutually exclusive. His pleadings support the absence of such a distinction in the context of this case.

McFarland's consistent theory at trial was that whether the connected lines were service lines or main lines was irrelevant. Jim Gordon testified that the contract between the city and McFarland included main line extensions and service line connections. McFarland testified that he did not remember the city council vote being based on any distinction between the two types of connections. Mashburn, the city councilman, testified that he voted with the understanding that the type of connection to McFarland's lines made no difference. David Lewis, the city attorney, testified that he never fully understood the distinction between service lines and main lines and that such a distinction was illogical. In jury argument, counsel for the city acknowledged that McFarland was arguing that the type of connection to his lines did not matter.

When McFarland's pleadings are correctly read, and when the evidence presented at trial is examined, it becomes clear that the question submitted to the jury was proper and supported by the pleadings and the evidence. *See* TEX.R.CIV.P. 278. The distinction between service line and main line connections was raised, argued, and relied upon by the city, not by McFarland. Therefore, it is a defensive theory, and it was the city's burden, not McFarland's, to

see that it was properly submitted. *See City of Houston v. Bush,* 566 S.W.2d 33, 35–36 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *Davis Bumper to Bumper, Inc. v. American Petrofina Co.,* 420 S.W. 2d 145, 150 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.); TEX.R.CIV.P. 279. We overrule the city's sixth point.

■ In its seventh point of error, the city argues that this case should not have been submitted to the jury because interpretation of the alleged contract was a matter of law for the court. However, there is no indication in the record that this particular complaint was ever presented to the trial court. Therefore, the city has waived any error in this regard. *See* TEX.R.CIV.P. 274; *City of Austin v. Daniels,* 160 Tex. 628, 335 S.W.2d 753, 758–59 (1960). In any case, the assertion that the question submitted somehow required the jury to interpret the contract is without merit. We overrule the city's seventh point.

In its eight and ninth points of error, the city objects to the award of attorney's fees and postjudgment interest on the award. The city argues that the actions by the city at issue in this case constituted governmental functions. It contends that attorney's fees for breach of contract cannot be awarded against a city engaged in a governmental function.

■ The city's eighth and ninth points of error should be sustained, although not for the reasons advanced by the city. The legislature has authorized recovery of attorney's fees from a corporation if a claim is based on contract. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). The Texas Supreme Court has held that the statutory predecessor of section 38.001 applies to municipal corporations when they are engaged in proprietary, as opposed to governmental, functions. *Gates v. City of Dallas,* 704 S.W.2d 737, 740 (Tex.1986).

However, apparently in response to *Gates,* the legislature enacted article 1269j–13 of the Texas Civil Statutes, which states:

A city, town, or village incorporated under state law, including a home-rule city, may not be considered a corporation under a state statute governing corporations unless the statute extends its application to a city, town, or village by express use of the term "municipal corporation," "municipality," "city," "town," or "village." It is the intent of the legislature that the limitation provided by this section apply regardless of whether the city, town, or village is acting in a governmental or proprietary function.

TEX.REV.CIV.STAT.ANN. art. 1269j–13 (Vernon Supp.1988). Article 1269j–13 effectively amends section 38.001 so that it no longer authorizes awards of attorney's fees against a city. *City of Dallas v. Arnett,* 762 S.W.2d 942, 951 (Tex.App.—Dallas 1988).

■ Article 1269j–13 became effective on June 11, 1987, prior to the trial of this case. McFarland could not have been entitled to any attorney's fees until he prevailed at trial. Therefore, article 1269j–13 governs resolution of these two points of error. Based on that article, and on this Court's interpretation of it, we sustain the city's eighth and ninth points of error.

We reform the trial court's judgment by deleting the award of attorney's fees and postjudgment interest on those fees. As reformed, we affirm the trial court's judgment.

STEPHENS, J., files a dissenting opinion.

STEPHENS, Justice dissenting.

I respectfully dissent. I would sustain point of error six, reverse the judgment of the trial court, and remand the cause for a new trial.

The majority holds that McFarland alleged that he and the city entered a contract that would entitle McFarland to a reimbursement if anyone subsequently connected to McFarland's mains and that such a contract was in conformity with the requirements of the city ordinances regarding refunds. The majority holds that McFarland submitted this precise issue to the jury, the jury agreed with McFarland,

and, therefore, McFarland is entitled to recover. The majority also holds that because the city denied that it entered a contract with McFarland and denied that McFarland's alleged contract fell within the requirements of the city ordinances, the burden of proof devolved upon the city to submit jury questions that would disprove McFarland's allegations to the contrary.

I disagree with the majority's analysis in two respects. First, the majority fails to construe the city ordinances; absent such a construction, it is impossible to determine whether the city's objection to the jury question has any merit. The majority incorrectly relies upon the jury's answer to the charge to determine whether the city's objection has any merit in the first instance. Second, the majority incorrectly places the burden of proof upon the city. The majority confuses the city's general denial with an affirmative defense.

### THE CITY ORDINANCES

McFarland alleged that the McDonald's line, which extended McFarland's main, was a "service line" within the definition of the city ordinances. McFarland argues that the city ordinances draw no distinction between a service line connection and a main line extension for purposes of reimbursement. The city denied McFarland's allegation; the city argues that the McDonald's line was not a "service line" within the definition of the city ordinances; rather, the city contends that the McDonald's line is a main line extension of McFarland's line, for which the city ordinances provide no reimbursement. The majority treats this dispute over the city ordinance definition of "service line" as a question of fact that the jury answered in favor of McFarland. I disagree with the majority's analysis.

Whether the city ordinances draw a distinction between a service line connection and a main line extension for purposes of determining reimbursements is a question of law to be resolved by the courts. The power to construe statutes lies with the courts. *Railroad Commission v. Houston Natural Gas Corp.*, 186 S.W.2d 117, 121–

22 (Tex.Civ.App.—Austin 1945, writ ref'd w.o.m.); *see Fuentes v. Howard*, 423 S.W. 2d 420, 423 (Tex.Civ.App.—El Paso 1967, writ dism'd w.o.j.). The province of the jury is to determine questions of fact. *Barton v. Davis*, 441 S.W.2d 299, 301 (Tex. Civ.App.—El Paso 1969, writ ref'd n.r.e.); *Bradford v. Manney*, 133 S.W.2d 601, 604 (Tex.Civ.App.—Fort Worth 1939, writ dism'd w.o.j.).

Because the terminology in the present case is very confusing, I find it useful to employ an analogy to illustrate my point. Suppose a plaintiff brings a negligence action against a defendant, and the plaintiff *incorrectly* alleges in his petition that he does not need to prove proximate cause. Consistent with his theory that he need not prove proximate cause, the plaintiff submits a jury question that fails to include proximate cause. The defendant objects to the jury question because it does not address the proximate cause issue. The jury finds in favor of the plaintiff.

On appeal, the defendant argues that the plaintiff needed to prove proximate cause, the jury question failed to address proximate cause, the defendant objected to this error in the jury question, and, therefore, the trial court may not deem a finding of proximate cause. Using the majority's analysis, the appellate court would have to overrule the defendant's point of error. The majority would reason that the plaintiff's theory of his case was that he did not need to prove proximate cause, the plaintiff submitted a jury question in harmony with that theory, and the jury found for plaintiff; therefore, plaintiff proved that proximate cause was not an element of his negligence cause of action, and plaintiff is entitled to recover.

I submit that the court in my analogy employed an incorrect legal analysis. In my analogy, the court needed to look at the law, not the jury answer, to determine whether proximate cause was an element of a negligence cause of action. In the present case, the majority needs to look at the city ordinance, not the jury answer, to determine whether the city ordinances draw a distinction between a service line

connection and a main line extension for purposes of reimbursements.

## THE BURDEN OF PROOF

McFarland alleged that the McDonald's line was a "service line" within the definition of the city ordinances. The city denied that the McDonald's line was a "service line" and, relying on the city ordinances, argued that the McDonald's line was in fact a main line extension. The majority holds that because it was the city that raised, argued, and relied upon the distinction between service lines and main lines, the city asserted a defensive theory that shifted the burden to the city to submit the appropriate issues to the jury, and the majority argues that because the city did not submit any issues on this defensive theory, the city has waived it. I disagree.

McFarland arrives at his conclusion that the McDonald's line is a "service line" on the basis of his contention that the reimbursement provisions of the city ordinances draw no distinction between main line extensions and service line connections, that is, that both are "service lines" within the city ordinances' reimbursement provisions. As the plaintiff, McFarland has the burden of proof. The city denied that the McDonald's line was a "service line." A general denial does not change the burden of proof. TEX.R.CIV.P. 279 (Vernon 1977).[1] Therefore, the burden of proving that the McDonald's line was a "service line" remained with McFarland.

Relying upon the city ordinances, the city argued that the McDonald's line was actually a main line extension, which is distinct and separate from a service line connection. The city's argument *rebuts* McFarland's contention that the McDonald's line is a service line; consequently, the city's argument still falls within a general denial. A party is not entitled to submit jury questions on issues raised by a general denial. TEX.R.CIV.P. 279 (Vernon 1977); *see, e.g., State v. Baxter,* 430 S.W.2d 547, 549 (Tex. Civ.App.—Waco 1968, writ ref'd n.r.e.).

At worst, the city's argument was an inferential rebuttal. An inferential rebut- tal seeks to disprove the plaintiff's factual theory by proving an alternate factual theory that is inconsistent with some factual element of the plaintiff's ground of recovery. *Select Insurance Co. v. Boucher,* 561 S.W.2d 474, 477 (Tex.1978). The basic characteristic of an inferential rebuttal is that it presents an inconsistent or a contrary theory from the claim relied upon for recovery. *Id.* For example, where a plaintiff brings a claim for total incapacity, the defendant's assertion that plaintiff is only partially incapacitated is an inferential rebuttal. *Id.* A party may not submit inferential rebuttal issues to a jury. *Id.* at 477–78; TEX.R.CIV.P. 277 (Vernon 1976).

The majority holds that the city asserted a defensive theory that placed the burden of submitting jury questions upon the city. As discussed above, when a defendant asserts rebuttal arguments, far from shouldering the burden of submitting jury questions, the defendant is prohibited from submitting issues on his rebuttal arguments. TEX.R.CIV.P. 277 (Vernon 1976) & 279 (Vernon 1977). Furthermore, as long as the plaintiff retains the burden of proof, if the plaintiff submits an incorrect jury charge, the Texas Rules of Civil Procedure only require the defendant to object to the error in the jury charge. TEX.R.CIV.P. 279 (Vernon 1977). The rules do not go so far as to require a defendant to draft and request a correct jury charge on behalf of the plaintiff's cause of action. *Id.*

One instance where a defendant shoulders the burden of proof is where the defendant asserts an affirmative defense. *Liberty Mutual Insurance Co. v. Woody,* 640 S.W.2d 718, 720 (Tex.App.—Houston [1st Dist.] 1982, no writ). An affirmative defense is a defense of avoidance and not of denial. *Emmer v. Phillips Petroleum Co.,* 668 S.W.2d 487, 491 n. 4 (Tex.App.— Amarillo 1984, no writ). If the defendant seeks to disprove the facts as alleged by the plaintiff, the defendant asserts a general denial; however, if the defendant admits that the facts as alleged by plaintiff are true, but the defendant seeks to explain or

1. The present case was tried before amended rules 277, 278, and 279 became effective.

avoid liability, the defendant must assert and prove an affirmative defense. *Warren Brothers Co. v. A.A.A. Pipe Cleaning Co.*, 529 S.W.2d 779, 782 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). An affirmative defense denies the plaintiff's right to judgment even if the plaintiff proves every allegation in his pleadings. *Highway Contractors, Inc. v. West Texas Equipment Co.*, 617 S.W.2d 791, 794 (Tex. Civ.App.—Amarillo 1981, no writ).

In the present case, the city does not assert an affirmative defense. The city does not admit that McFarland's allegations are true and then avoid liability on the basis of some other grounds. Just the contrary, the city denied that it and McFarland entered a contract and denied that the McDonald's line was a "service line" within the definition of the city ordinances. Because this argument does not amount to an affirmative defense, the burden of proof did not shift to the city.

The majority's authorities for the proposition that the city shouldered the burden of submitting issues on its defensive theory are affirmative defense cases. In *City of Houston v. Bush*, the defendant relied upon the defense of governmental immunity. *City of Houston v. Bush*, 566 S.W.2d 33, 34 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Governmental immunity is an affirmative defense, because the defendant argues that even if everything the plaintiff alleges is true, the plaintiff still does not recover, because the defendant is immune from liability. In *City of Houston*, because the defendant failed to submit an issue on a fact needed to prove it was entitled to governmental immunity, the court held that the issue was waived. *Id.* at 36; TEX.R.CIV.P. 279 (Vernon 1977).

In *Davis Bumper to Bumper*, the plaintiff sued the defendant on the basis of a verified, sworn account. *Davis Bumper to Bumper, Inc. v. American Petrofina Co.*, 420 S.W.2d 145, 147 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). The defendant at trial admitted that a sworn account between the parties existed and that it had not paid the plaintiff for gasoline; however, the defendant argued that the gas-

oline was of inferior quality; therefore, the defendant was not liable. *Id.* at 149. In effect, the defendant argued that even though everything in the plaintiff's petition was true, the plaintiff was nevertheless not entitled to recover because the plaintiff had not held up its side of the bargain. This is the affirmative defense of failure of consideration. TEX.R.CIV.P. 94. Because the defendant failed to submit an issue on whether the gasoline was of the proper quality, the court held that the issue was waived. *Id.* at 150; TEX.R.CIV.P. 279 (Vernon 1977).

The majority's reliance upon rule 279 of the Texas Rules of Civil Procedure is also misplaced. *City of Houston* and *Davis Bumper to Bumper* illustrate that rule 279's requirement that a defendant submit every element of a ground of defense or risk waiving unsubmitted elements refers to defendants' affirmative defenses. *City of Houston*, 566 S.W.2d at 36; *Davis Bumper to Bumper*, 420 S.W.2d at 150.

### POINT OF ERROR SIX

The trial court submitted one question to the jury:

> Do you find from a preponderance of the evidence that in the summer of 1981 the Terrell City Council voted to collect from Lee McFarland a 50% pro-rata refund for the cost of line installation in the event another tied onto said line?

The jury answered, "We do." In point of error six, the city argues that the trial court erred in submitting the question to the jury. The city objected to the charge at trial on the grounds that it failed to distinguish between a main line extension and a service line connection. McFarland argues that the city failed to raise this objection, but that argument will be addressed later, and, for now, it will be assumed that the city raised this objection. As discussed earlier, under my analysis, in order to determine whether the city's objection has any merits, it is necessary to look at the city ordinances.

The city ordinances define a "service line" as "a water or sewer pipe running from the water or sewer main to the prop-

erty to which water or sewer service is given." Terrell Subdivision Ordinance § 1(a)(24). Stan Ballard, Jr., the city engineer, explained that a service line is connected to a main line and normally serves only a single piece of property or improvement. The ordinances define an "approach main" as "an off-site main which brings water or sewer service to the subdivided property." Terrell Subdivision Ordinance § 1(a)(2). Although the ordinances do not define an "off-site" main, an "on-site main" is defined as "a water or sewer main located in a roadway, alley, or easement within the perimeter of the property of a subdivider and which provides service only within a subdivider's property." *Id.* § 1(a)(18). Ballard explained that a main line serves more than one property and is the line to which the service lines attach. I rely upon an analogy to again clarify the issues. A main line is like an artery, which is the main channel that carries blood from the heart to the rest of the body. Service lines are like the capillaries that take the blood from the arteries to specific areas of the body.

The refund provision of the city ordinances provides:

Section 16. Refunds to subdivider.

(a) *Water and sewer approach mains.* There shall be refunded on a semi-annual basis to the subdivider any pro-rata charges collected for *service line attachments* to the *approach mains. . . .*

All refunds to the subdivider shall terminate at the end of five (5) years after the date of the initial development contract even though the pro-rata charges collected and the city's payments for on-site *service installations* are insufficient to accrue the full amount of *approach main installation* costs within the five (5) year period. In no event shall the total refund, including the applicable pro-rata charges collected, exceed the total cost of construction of the approach mains, and the engineering fee exclusive of any outside costs. . . .

Terrell Subdivision Ordinance § 16(a) (emphasis added). Section 16(a) of the subdivision ordinance provides that when someone attaches a service line to a main line, the City collects a pro rata charge from that person and refunds that money to the subdivider who constructed the main line. Section 16(a) makes no refund provision for the extension of a main line. The only manner in which McFarland's construction of the refund provision can be correct is if the words "service line" are deleted from the first paragraph. If the words "service line" are construed to read "service line or main line," then the second paragraph becomes confusing, because that paragraph states that an approach main installation is reimbursed by "service installations," not "service or main installations." Given the separate definitions of "service lines" and "approach main," and given the construction of section 16(a) as a whole, McFarland's contention that a "service line" includes a "main line" is without merit. Although a main line serves a subdivision, it is not a "service line." An artery serves the entire body, but it is not a capillary. Therefore, I would hold that the city ordinances draw a distinction between a service line connection and a main line extension and that the city ordinances authorize a reimbursement only if someone subsequently connects a service line to a main line installation.

The evidence at trial was uncontested that the McDonald's line was a main line extension and was not a service line connection to McFarland's main. The trial court need not submit uncontroverted issues to the jury. *Winn–Dixie Texas, Inc. v. Buck,* 719 S.W.2d 251, 253 (Tex.App.— Fort Worth 1986, no writ); *Texas Employers Insurance Ass'n v. Miller,* 596 S.W.2d 621, 625 (Tex.Civ.App.—Waco 1980, no writ); *see Slay v. Burnett Trust,* 143 Tex. 621, 633, 187 S.W.2d 377, 384 (1945). Therefore, as a matter of law, the McDonald's line is a main line. Accordingly, if McFarland relies upon the city ordinances, he is not entitled to a reimbursement.

However, the evidence at trial showed that the parties entered one of two possible agreements. The evidence revealed that the parties entered an agreement pursuant to the city ordinances. The August 25,

1981, letter specifically states that the parties' agreement was "according to city ordinances." McFarland admitted that the August 25, 1981, letter correctly reflected the agreement. Mashburn testified that the parties' agreement was pursuant to the city ordinances, and Mayor Briggs also testified that the city agreed to "[w]hatever the subdivision ordinance called for." As discussed above, if McFarland relies upon the city ordinances, he may not recover.

The evidence also shows that McFarland, Mashburn, and Gordon believed the agreement was to reimburse McFarland if anyone connected to McFarland's main and that no distinction was drawn between a service line connection and a main line extension. If this was the parties' agreement, then McFarland may be entitled to recover a reimbursement, assuming such an agreement beyond the city ordinances is legal.

Accordingly, the fact question the jury needed to determine was whether the parties agreed to a reimbursement pursuant to the city ordinances, in which case McFarland was not entitled to recover, or whether the parties agreed to a reimbursement beyond the city ordinances, that is, the parties agreed that the city would reimburse McFarland even if someone subsequently extended his mains. Therefore, the city's objection to the jury question is pivotal when determining whether McFarland is entitled to recover.

First, however, it is necessary to determine whether the city raised this objection at trial. McFarland maintains that the city failed to raise a proper objection. To understand McFarland's argument, I first quote the city's exact objection:

> Additionally objection to the global nature of the charge. We feel it does not properly set forth the three keys used in the case: Number one, was there a vote; number two, if there was a vote, does it, was it for a fifty percent refund; if it was for a fifty percent refund, did this include any lines whatsoever, whether they be service lines or main line extensions, not trying to draw a distinction but making sure the issue covers both

kind[s] of lines. We feel that it's not clear in the issue that it does.

McFarland contends that the above objection actually argues in favor of the jury charge because it argues in favor of not drawing a distinction between main line extensions and service line connections. For the reasons given below, I disagree with McFarland.

"A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." TEX.R. CIV.P. 274. The objection distinctly addresses the charge's failure to differentiate between a service line connection and a main line extension. The inarticulate portion of the objection fails to vitiate that portion of the objection that distinctly and expressly complains of the charge's failure to draw the distinction.

"In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context." TEX.R. APP.P. 52(a). Because the objection distinctly complained of the charge's failure to address the main extension and service line connection distinction, I would hold that counsel's objection was sufficiently specific. Additionally, in the context of the entire case, I would hold that the city's objection was apparent to the trial court. At trial, the city emphasized the difference between main line extensions and service line connections. The city produced evidence that the McDonald's line was a main line extension and not a service line connection. Consequently, for counsel to reverse field and argue that the distinction is immaterial makes no sense. Furthermore, the charge as written draws no distinction; therefore, if the city were arguing as McFarland contends, the objection would have been unnecessary. The objection, in the context of the entire trial and the charge as written, was apparent to the trial court. Accordingly, I would hold that the city's objection was sufficient to preserve the error for appeal.

Because no distinction is made, the jury's answer, "We do," produces two possible meanings. First, the jury may have meant that the parties agreed that only if someone tied a service line on to McFarland's main line would McFarland be entitled to a refund, as provided in the city ordinances. If this meaning is applied, even though the jury answered, "We do," McFarland would not be entitled to a refund, because the evidence conclusively established that the McDonald's line was a main line extension.

On the other hand, the jury could have meant that the parties agreed that in the event anyone either (a) tied a service line on to McFarland's main line or (b) tied an extension on to McFarland's main line, then McFarland was entitled to a refund. Under this interpretation of the jury answer, McFarland would be entitled to recover, assuming such a contract beyond the scope of the city ordinances was legal.

Courts are not permitted to speculate as to what the jury intended by an ambiguous answer, and ambiguous jury findings cannot constitute a proper basis for a judgment. *Northern Texas Traction Co. v. Armour & Co.*, 116 Tex. 176, 179, 288 S.W. 145, 146 (Tex.Comm'n App.1926, opinion adopted); *Moore v. Moore*, 67 Tex. 293, 297, 3 S.W. 284, 286 (1887); *Parker v. Keyser*, 540 S.W.2d 827, 830–31 (Tex.Civ. App.—Corpus Christi 1976, no writ). An issue is objectionable if it is phrased such that it will produce an ambiguous answer. *Baker Marine Corp. v. Moseley*, 645 S.W. 2d 486, 489 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Where the jury answer is ambiguous, the proper disposition of the case is to reverse and remand for a new trial. *Northern Texas Traction Co.*, 288 S.W. at 145; *Moore*, 3 S.W. at 286; *Parker*, 540 S.W.2d at 831. Accordingly, because the jury answer is ambiguous, I would sustain point of error six and remand the cause for a new trial.