**Ordrey PARKER et al., Appellants,**

v.

**Harold R. KEYSER et ux., Appellees.**

**No. 1095.**

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 30, 1976.

Rehearing Denied Sept. 30, 1976.

John D. Barrow, Nicholas & Morris, Corpus Christi, for appellants.

Curtis B. Dyer, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a conversion case. The plaintiffs, Harold R. Keyser and wife, Doris L. Keyser, brought suit against defendants, Ordrey Parker and Peggy A. Parsley, for actual and exemplary damages resulting from the alleged damage, destruction and conversion of certain personal property belonging to the plaintiffs. Trial of the case was before a jury which was submitted on special issues. The jury found that "Ordrey Parker and/or Peggy Parsley" wrongfully removed, damaged or destroyed property belonging to plaintiffs, which property had a fair market value of $3,167.76. The jury also found that the defendants acted with malice in removing plaintiffs' property, and awarded plaintiffs exemplary damages in the sum of $2,000.00 against Ordrey Parker and/or Peggy A. Parsley. The trial court entered judgment for plaintiffs and against the defendants jointly in the total sum of $5,167.76. From that judgment both defendants have duly perfected this appeal to this Court.

On or about July 13, 1970, the plaintiffs, Mr. and Mrs. Keyser, entered into a real estate purchase contract with Robert Parsley and wife, Peggy A. Parsley, to purchase a home located in Portland, Texas. Mrs. Parsley's mother, Mrs. Ordrey Parker, was a part-time realtor and acted as the sales agent in the transaction. The Keysers resided in Providence, Rhode Island at that time and upon the execution of the pur-·chase contract returned to Rhode Island to close their business and prepare for their move to Portland, Texas. The purchase contract provided that the closing was to take place on or before August 15, 1970.

On August 3, 1970, Hurricane Celia struck the Texas Coast causing extensive property damage in and around Portland, Texas, including extensive damage to the property which was subject to the contract of purchase between the parties. Mrs. Parker notified Mr. Keyser by telephone in Rhode Island that the house was damaged to the extent that it was not liveable. Mr. Keyser told Mrs. Parker they would be arriving in Portland in approximately a week to view the damage.

Immediately after the hurricane, Mrs. Parker obtained a house trailer from HUD (a government agency) in her daughter's (Mrs. Parsley's) name and had it placed at the rear of a house on Polaris Street which belonged to Mrs. Parker. Her daughter, however, did not move into the trailer at that time, but remained at the Seashell Inn where living accommodations were furnished as part of her compensation as manager.

The Keysers arrived in Portland on Labor Day in September of 1970 after the hurricane had struck. They stayed that night with some friends and met with Mrs. Parker the next day so as to determine if the necessary arrangements had been made by Mrs. Parker to complete the sale of the house. Because the house was not liveable, the Keysers found themselves without a place to stay until the house could be repaired. Mrs. Parker offered the Keysers the use of the HUD trailer, it being disputed whether the use was only for a short period of time or until the house they were purchasing was repaired and made liveable. The Keysers accepted and moved their belongings into the trailer and resided there approximately seven (7) weeks. During this time, the sale was completed and the deal closed on October 2, 1970, even though the house was still not completely repaired.

Sometime around mid-October, Mrs. Parker sent her husband to the HUD trailer where the Keysers were staying, with a note stating that they (Mrs. Parker and

Mrs. Parsley) were ready for their trailer and were ready to move back into it. Because the house they were purchasing was still not available, and because Mr. Keyser was unable to find other housing for his family, they chose to continue to stay in the trailer. The need for the trailer by Mrs. Parker and Mrs. Parsley was occasioned by Mr. Parker resigning as manager of the Seashell Inn resulting in the loss of the free accommodations and the further fact that their home was still in need of repair.

Although the evidence is conflicting, it appears that several days later the utilities to the trailer were cut off and the Keysers were forced to leave the trailer and spend the night with some friends. They took with them only the clothes they wore and some insulin that Mr. Keyser kept in the refrigerator in the trailer. The next day, Mrs. Keyser and her daughter returned to the trailer to pick up some clothing and found that everything was gone.

Mrs. Keyser then went to the police station in Portland and reported the incident. She was then referred to the Justice of the Peace, who contacted Mrs. Parker and was told that all of the Keysers' property was stored in her garage. The Justice of the Peace told Mr. Keyser that before he went out there to pick up his property, he should ask a policeman to go with him so there would be no trouble. The jury could have found that only Ordrey Parker wrongfully removed the property. The jury could have found that both Parker and Parsley wrongfully removed the property. Yet, the trial court entered judgment against both Parker and Parsley. Mrs. Parker testified that she had not been at the trailer when the property was removed or stored in that she was ill. Mrs. Parsley stated that it was not she who removed the property, that it was a representative from HUD and the Red Cross who removed the property from the trailer and stored it in the Parker garage. There was other evidence that both removed the property.

Approximately a week later, Mr. and Mrs. Keyser went, along with a policeman, to the Polaris Street address to pick up their property. Upon regaining possession of their property, the Keysers made a list of the property allegedly missing, damaged or destroyed included within which was $2,272.81 in cash which Mr. Keyser had kept in a sock in his daughter's chest of drawers. He also listed property which had been damaged or destroyed. The defendants denied any knowledge of the $2,272.81 missing cash as well as the other items allegedly missing.

On December 14, 1971, Mr. and Mrs. Keyser brought this suit against Mrs. Parker and Mrs. Parsley alleging that: defendants willfully broke into and entered the trailer and converted all of their personal property; and that upon regaining possession, the sum of $2,272.81 was missing as well as a quantity of clothing and other personal property which was either missing, damaged or destroyed.

The case was tried before a jury and in answer to certain special issues, the jury found: 1) that Ordrey Parker and/or Peggy Parsley wrongfully removed and damaged or destroyed property belonging to plaintiffs; 2) that the fair market value of the property so removed, damaged or destroyed was $3,167.76; 3) that in removing the property from the trailer, the defendants acted with malice; 4) and the sum of $2,000.00 should be awarded plaintiffs against Ordrey Parker and/or Peggy A. Parsley as exemplary damages.

The defendants made a motion for judgment alleging among other things that the jury's answers to special issues 1, 2 and 5 would not support a judgment against Ordrey Parker or Peggy A. Parsley because the answers do not state which party was the actor and the issues are completely ambiguous. The motion was overruled. The trial court thereafter entered judgment for the plaintiffs and against the defendants Parker and Parsley in the sum of $5,167.76. Both defendants have perfected their appeal from that judgment.

The appellants bring forward on appeal twelve points of error. In their points of

error No. 1 and 2, they assert that the trial court erred in not disregarding the jury's answers to special issues 1, 2 and 5[1] and in overruling defendants' motion for judgment because the answers to said issues fail to show an acting party, the issues are completely ambiguous and will not support a judgment for plaintiff. In their third point, appellants assert that the trial court erred in awarding judgment for exemplary damages against both defendants because there can be no determination from the jury's affirmative answer to special issue 5 as to whether the damages are awarded against Ordrey Parker or Peggy Parsley, or both. Prior to the submission of the above issues to the jury, the defendants objected to the submission of special issues 1 and 2 as follows:

"Defendants object to Special Issues Number 1 and 2 for each of the several reasons. Those Issues are submitted in a disjunctive 'Ordrey Parker and/or Peggy Parsley' and therefore you are adjoining in effect two Issues into one Issue, and you will not upon an answer to either one of those Issues have a final determination of whether either one of those individuals were guilty of the alleged acts called for in the Special Issues. Therefore, there would be no final judgment to be entered in this cause because the Court could not determine which one or the other of those parties were guilty of the acts charged, and accordingly judgment could not be rendered as there is no basis under the pleadings and the facts of this case to establish joint and several liability as be-

tween these two Defendants in this proceedings."

This objection was dictated to the court reporter, reduced to writing, and signed by the trial judge. The trial judge overruled the objection.

■ The defendants properly objected to the submission of the said issues. They pointed out distinctly the matter to which they objected, the grounds of their objection, therefore, they preserved the error for our review. Rules 272, 274 and 279, T.R.C.P.; 3 McDonald, Texas Civil Practice, § 12.26–C, p. 399 (1970); *Riley v. Industrial Finance Service Co.,* 157 Tex. 306, 302 S.W.2d 652 (1957); *Lyles v. Texas Employers' Insurance Association,* 405 S.W.2d 725 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.).

Looking at special issues 1 and 2 and the jury's answers thereto, it is impossible for us to determine what the jury intended from such findings, "We do"!

■ As such, the language of the issue gives rise to a mistake in the meaning of the verdict actually returned. Neither the trial court nor this Court is permitted to speculate as to what the jury intended by the ambiguous answer which, because of its ambiguity, cannot constitute a proper basis for a judgment. See *Moore v. Moore,* 67 Tex. 293, 3 S.W. 284 (1887); *Northern Texas Traction Co. v. Armour & Co.,* 116 Tex. 176, 288 S.W. 145 (1926, opinion adopted); *Patten v. Rodgers,* 430 S.W.2d 479 (Tex. Sup.1968); *Wichita Falls & S. R. Co. v.*

---

1. Special issues 1, 2 and 5 as submitted to the jury read as follows:

*"SPECIAL ISSUE NO. 1*

Do you find from a preponderance of the evidence that on the occasion in question, Ordrey Parker and/or Peggy Parsley wrongfully removed property belonging to the Harold R. Keyser family from the trailer in which the Harold R. Keyser family was living? Answer: 'We do' or 'We do not'. Answer: 'We do'.

*SPECIAL ISSUE NO. 2*

Do you find from a preponderance of the evidence that on the occasion in question, Ordrey Parker and/or Peggy Parsley destroyed or damaged property belonging to the Harold R. Keyser family from the trailer at the time and

place in question? Answer: 'We do' or 'We do not'. Answer: 'We do'.

*SPECIAL ISSUE NO. 5*

What sum of money, if any, do you find from a preponderance of the evidence that Harold R. Keyser and wife should be awarded against Ordrey Parker and/or Peggy A. Parsley as exemplary damages?

'Exemplary damages' means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which may have been found by you as actual damages. Answer in dollars and cents, if any. Answer: $2000.' "

*Lindley,* 143 S.W.2d 428 (Tex.Civ.App.—Fort Worth 1940, writ dism'd judgm. cor.); *Cactus Drilling Company v. Williams,* 525 S.W.2d 902 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.); *Wright v. Carey,* 169 S.W.2d 749 (Tex.Civ.App.—Eastland 1943, no writ); *Gulf States Utilities Co. v. Wooldridge,* 90 S.W.2d 325 (Tex.Civ.App.—Beaumont 1936, no writ); 3 McDonald, Texas Civil Practice, § 12.18.1 (1970); Hodges, Special Issue Submission In Texas, §§ 42, 46 and 47 (1959); Rules 277, 279, T.R.C.P. To use both the "and" and "or" leads to uncertainty, particularly when the jury, as in this case, was required to answer "We do" or "We do not". *Powers v. Standard Acc. Ins. Co.,* 188 S.W.2d 239 (Tex.Civ.App.—Dallas 1945, rev'd on other grounds, 144 Tex. 415, 191 S.W.2d 7).

The appellees, however, contend that special issues 1 and 2 as submitted, were proper in that there was evidence to support the jury's findings that both Parker and Parsley removed, damaged or destroyed plaintiffs' property. While this may be absolutely true, the evidence nevertheless is conflicting and in view of the "and/or" submission of the issues, we could only speculate what the jury intended when they answered "we do" to the issues.

■ We, therefore, conclude that the trial court erred in overruling defendants' objection to special issues 1 and 2, because such issues were multifarious and duplicitous inquiring about acts of two different individuals in one issue without allowing the jury to choose one or the other or both. For a correct way to submit this type of issue see *Gillette Motor Transport Co. v. Whitfield,* 186 S.W.2d 90 (Tex.Civ.App.—Fort Worth 1945) aff'd, 145 Tex. 571, 200 S.W.2d 624 (1947); *Viduarri v. Bruni,* 179 S.W.2d 818 (Tex.Civ.App.—San Antonio 1944, writ ref'd w.o.m.); *Texas General Indemnity Co. v. Scott,* 246 S.W.2d 228 (Tex.Civ.App.—Amarillo 1952) rev'd on other grounds, 152 Tex. 1, 253 S.W.2d 651 (1953). See also Hodges, Special Issue Submission In Texas, § 47 (1959); *Pope & Lawerre,* Revised Rule 277—A Better Special Verdict System For Texas, 27 S.W.L.J. 577, 591 (1973).

To submit those two issues conjunctively and disjunctively was error for still another reason. Rule 277, T.R.C.P. provides in part:

" . . . The court may submit an issue disjunctively where it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exist. For example, the court may, in a workmen's compensation case, submit in one question whether the injured employee was permanently or only temporarily disabled."

■ The specific authorization by Rule 277, T.R.C.P. of disjunctive submission extends only to the presentation of true opposites, that is, to inferential-rebuttal situations and to alternative grounds of recovery which are factually inconsistent. Hodges, Special Issue Submission In Texas, § 27, p. 77 (1959). See also General Commentary, Rule 277, T.R.C.P.; McDonald, Texas Civil Practice, § 12.18.2(b). Although the issues as submitted inquire into only one ground of recovery, conflicting fact questions are present within the single issue, which when limited to an answer of "we do" or "we do not", causes uncertainty to arise as to the jury's intent. Neither are exclusive of the other, therefore, they are not authorized under Rule 277, T.R.C.P.

Because of this error, it is not necessary for us to consider the appellants' other points of error. The judgment of the trial court is accordingly reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.