Paul TURNER, Appellant,

v.

PRECISION SURGICAL, L.L.C., Appellee.

No. 01–07–01113–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 17, 2008.

Rehearing Overruled Nov. 13, 2008.

Jonathan C. Andresen, The Andresen Firm, LLP, Houston, TX, for Appellant.

Geoffrey S. Binney, The Woodlands, TX, David P. Andis, Gauntt & Kruppstadt, L.L.P., Spring, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

TIM TAFT, Justice.

Appellant, Paul Turner, appeals from a take-nothing judgment, rendered upon a jury verdict, on his retaliatory-discharge and *Sabine Pilot* [1] claims against appellee, Precision Surgical, L.L.C. ("Precision"). The trial court submitted the jury questions on Turner's claims in the disjunctive. We determine whether the trial court erred in doing so and, alternatively, whether any possible error was harmful. We affirm.

### Background

Starting approximately in August 2002, Turner was employed as a sales representative for Precision. By letter dated January 30, 2006, Turner was discharged from his employment.

Turner alleged and produced evidence that in July 2005, approximately six months before he was terminated, he was injured on the job from a slip-and-fall accident, which broke two ribs in his lower back. Turner testified that Precision asked him not to file for workers' compensation and instead indicated that he should file a claim under the company's health-insurance plan, which excluded claims that workers' compensation covered. For Turner to receive coverage under the company's health-insurance policy, he would have had to misstate the facts of his injury. Although Turner did not file a claim under the company's health-insurance plan at that time, he did not expressly reject Precision's instruction to do so, and he did not file for workers' compensation benefits then, either. Rather, he decided to "tough

it out." When he reinjured his back in November of 2005, he again discussed filing for workers' compensation benefits with Precision, but, according to his testimony, was again discouraged from filing, and did not then do so, either. It was not until January 2006, after he had injured his back a third time, that Turner finally applied for workers' compensation benefits. It was very soon after he had filed for workers' compensation benefits that Precision discharged Turner.

Turner contended that Precision had terminated him for refusing to engage in the illegal activity of insurance fraud (by falsely reporting the facts of his injury to receive coverage under Precision's health-insurance plan), or, alternatively, in retaliation for his having filed a workers' compensation claim in January 2006. In contrast, Precision presented evidence that Turner had been terminated, not as a result of his injury, but, *inter alia*, due to his pattern of unreliability, dishonesty, harming the reputation of Precision, and insubordination. Precision denied suggesting that Turner do anything illegal, intimating that he would face trouble if he filed a workers' compensation claim, and firing him for these things.

The jury trial began in November 2007. At the conclusion of the three-day trial, the trial court gave the following charge:

**Question One:** Was Paul Turner discharged for the sole reason that he refused to perform an illegal act?

As used in this question, an illegal act means insurance fraud. A person commits insurance fraud if they [sic] intentionally submit false information knowing it to be false to an insurance company in support of a claim. Answer "yes" or "no."

---

1. *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985) (holding that terminating employee solely for his refusal to perform illegal act violates public policy).

*If you answer "no" to question one, then answer question two. Otherwise, do not answer question two.*

**Question Two:** Did Precision Surgical, LLC, discharge Paul Turner because he filed a workers' compensation claim in good faith?

... [T]here may be more than one cause for an employment decision. An employer does not discharge an employee for filing a workers' compensation claim in good faith. [sic] If the employer would have discharged the employee when he did even if the employee had not filed a workers' compensation claim. Answer "yes" or "no."

(emphasis added).

Turner objected to the conditional nature of the instruction (italicized above) given for the second question. The trial court overruled Turner's objection:

Turner: Plaintiff objects to Question 2 on the basis that it is predicated upon [a] no response for Question 1. Plaintiffs pled the cause of action in the alternative, and both of them—the plaintiff feels that both—both questions should be submitted at the same

time for consideration without one requiring a "no" answer.

Court: So that you get a—

Turner: So that the plaintiff can—

Court:—charge that we can't—I mean, a verdict that we can't use because the answers are in conflict if they say "yes" to both?

Turner: Your Honor, it is the plaintiff's position that election of remedies would then be appropriate.

Court: Okay. That's overruled.

The jury returned a negative answer on both causes of action, and the trial court rendered a take-nothing judgment.

### Propriety of the Trial Court's Jury Instruction

In his sole issue, Turner argues that the instruction preceding Question Two was improper because the trial court conditioned a response to the second question on a negative response to the first, presenting his claims disjunctively and thus allegedly preventing him from properly presenting both of his claims, which he contends were alternative (but not mutually exclusive) theories of recovery.[2]

---

2. Citing Texas Rule of Civil Procedure 278, Precision argues that Turner waived any error in the jury charge by failing to submit, in writing, a proposed instruction to the trial court. *See* Tex.R. Civ. P. 278. We disagree. Rule 278 applies, for example, to a party wishing to preserve a complaint about the omission of his requested instruction. *See id.* ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."). The rule does not apply to a party who, for example (as with Turner here), wishes that another party's proposed instruction be omitted entirely. *See* Tex.R. Civ. P. 274 ("Any complaint as to ... [an] instruction, on account of any defect ... is waived unless specifically included in the

objections."); *Greer v. Seales,* No. 09–05–001–CV, 2006 WL 439109, at *4 n. 3 (Tex.App.–Beaumont Feb. 23, 2006, no pet.) (memo. op.) (indicating that appellants preserved error to charge's inclusion of instruction on unavoidable accident by their having objected at charge conference); *see also Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994) ("[A]n objection is sufficient to preserve error in a defective instruction."); *Yellow Cab & Baggage Co. v. Green,* 154 Tex. 330, 333, 277 S.W.2d 92, 93 (1955) ("[I]n a case where the trial court gives a definition or instruction ... and a party is not satisfied with the instruction or definition given, all that is necessary ... is to file an objection."). Because Turner objected to the inclusion of *any* conditional instruction, his challenge is preserved.

## A. The Standard of Review

An abuse-of-discretion standard governs challenges to error in the jury charge. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 819 (Tex.App.–Houston [1st Dist.] 2008, no pet.). A trial court abuses its discretion when its actions are arbitrary, unreasonable, and without reference to any guiding rules or principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997).

## B. The Law

### 1. Submission of Jury Questions Generally

■ Ordinarily, a trial court has broad discretion in submitting jury questions and instructions. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); *Roy v. Howard–Glendale Funeral Home*, 820 S.W.2d 844, 846 (Tex.App.–Houston [1st Dist.] 1991, writ denied). In fact, trial courts have considerably more discretion in submitting instructions and definitions than in submitting questions. *See Harris v. Harris*, 765 S.W.2d 798, 801 (Tex.App.–Houston [14th Dist.] 1989, writ denied). Nonetheless, a jury charge must fairly place the disputed issues before the jury. *Blonstein v. Blonstein*, 831 S.W.2d 468, 471 (Tex.App.–Houston [14th Dist.] 1992), *writ denied*, 848 S.W.2d 82 (Tex.1992). Additionally, a party is entitled to an affirmative submission of all of its theories of recovery that have support in the pleadings and evidence. *See* TEX.R. CIV. P. 278 (providing that it is mandatory for trial court to submit questions raised by pleadings and evidence); *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992).

### 2. Conditional Submission

■ A jury question is conditionally submitted when the jury is instructed to answer the question contingent upon its answer to some other question, whether the predicate answer be in the affirmative or in the negative. *See* Roy W. McDonald & Elaine A. Grafton Carlson, *Jury Trial: Charge, in* 4 *Texas Civil Practice* § 22:30[a] (West Group, 2nd ed.2001) [hereinafter "McDonald & Carlson"]; 71 Tex. Jur.3d. *Trial & Alternative Dispute Resolution* § 281 (2002). Commentators have noted certain advantages of conditional submissions:

> The judicious employment of conditions has many advantages. It may simplify the charge, clarify the jury's task, avoid findings on immaterial questions, prevent the risk of comment on the weight of the evidence, or forestall conflicting findings.

McDonald & Carlson § 22:30[a]. Nonetheless, because it is error for a trial court to refuse to submit a question when there is some evidence to support its submission, an improper conditional submission that "deprives a party of the affirmative submission of an issue raised by the pleadings and evidence ... constitutes reversible error." *Varme v. Gordon*, 881 S.W.2d 877, 881 (Tex.App.–Houston [14th Dist.] 1994, writ denied). For example, it is improper to condition a question submitting one cause of action upon an affirmative answer to a question submitting another cause of action when the elements of two causes of action are different and each constitutes a separate, independent theory of recovery. *See id.*

### 3. Disjunctive Submission

Disjunctive submission of jury questions is governed by Texas Rule of Civil Procedure 277, which provides, in part:

> The court may submit a question disjunctively when it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists.

TEX R. CIV. P. 277. "The disjunctive submission provision contained in Rule 277 was added to the jury charge rules in 1940 as an exception to separate and distinct submission." *See William V. Dorsaneo III, Revision & Recodification of the Texas Rules of Civil Procedure Concerning the Jury Charge*, 41 S. TEX. L.REV. 675, 714 (Summer 2000) [hereinafter "Dorsaneo, *Revision & Recodification*"]; *see also* TEX.R. CIV. P. 277, 3 TEX. B.J. 566 (1940, amended 1941) (allowing use of disjunctive submission of two or more inconsistent issues in one question as one of very limited exceptions to rule that otherwise required separately and distinctly submitted special issues). "Accordingly, disjunctive submission is simply one type of broad-form submission." Dorsaneo, *Revision & Recodification* at 714.

█ A disjunctive submission has been described as "an 'either/or' question posed in a manner that necessarily prevents the two factual alternatives inquired about from being found to exist concurrently." R. Mike Borland, Comment, *Disjunctive Submission of Inferrential Rebuttal Issues*, 33 BAYLOR L.REV. 147, 148 (Winter 1981) [hereinafter "Borland, *Disjunctive Submission*"]. Accordingly, rule 277 allows the trial court to submit, disjunctively, the existence of two mutually exclusive propositions when conflicting answers are possible.[3] *See Lake LBJ Mun. Util. Dist. v. Coulson*, 692 S.W.2d 897, 908 (Tex.App.–

Austin 1985), *rev'd on other grounds*, 734 S.W.2d 649 (Tex.1987); *Warren v. Denison*, 563 S.W.2d 299, 304–05 (Tex.Civ. App.–Amarillo 1978, no writ); *see also Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex.2004) (suggesting disjunctive jury question that allowed jury to determine which of two parties committed first material breach of contract); *Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex.1978) (indicating that submission of disjunctive jury issues is appropriate when two alternative grounds of recovery are developed through pleadings and submitted issues).

Certain commentators have opined that "[d]isjunctive submissions ... should be used sparingly and with great caution" because they

> run the danger of either misplacing the burden of proof (when one of two options must be shown by a preponderance of the evidence and the other need not be) or of unduly limiting the jury's choices (when the jury in fact has more than two choices—*e.g.*, the plaintiff was negligent, the defendant was negligent, or the negligence of neither party was shown by a preponderance of the evidence).

The Honorable Joe Brown, Jack Hebdon, & C.L. Mike Schmidt, *Personal Injury, in* 5 *Texas Practice Guide* § 13:112 (West Group, 2nd ed., 2008); *see* Borland, *Disjunctive Submission* at 148 (stating that

---

**3.** This standard has sometimes been described as authorizing disjunctive submission *only* when true opposites are presented as, for example, alternative grounds of recovery that are factually inconsistent. *See Rathmell v. Morrison*, 732 S.W.2d 6, 12 (Tex.App.–Houston [14th Dist.] 1987, no writ) (quoting *Parker v. Keyser, infra*); *Warren v. Denison*, 563 S.W.2d 299, 305 (Tex.Civ.App.-Amarillo 1978, no writ) (same); *Parker v. Keyser*, 540 S.W.2d 827, 831 (Tex.App.–Corpus Christi 1976, no writ). At least one commentator has disagreed with this description of rule 277, argu-

ing that the rule does not limit the use of disjunctive questions solely to strict opposites. *See* Dorsaneo, *Revision & Recodification* at 714–15 (criticizing *Rathmell*); *see also Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex.2004) (suggesting disjunctive jury question that allowed jury to determine which of two parties committed first material breach of contract, *i.e.*, situation not involving opposite, alternative claims). This debate does not affect our disposition, however.

disjunctive submission "is appropriate only when one or the other of the conditions or facts *must* exist; its use would be inappropriate where there is the possibility of an alternative finding not presented in the issue.") (emphasis in original).

The current text of rule 277 contemplates the disjunctive submission of issues in one jury question, but an early advisory opinion indicates that issues may be submitted disjunctively in separate questions, with one being conditioned, or predicated, on a negative answer to the other. *Compare* TEX. R. CIV. P. 277 ("The court may submit *a question* disjunctively when it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists.") (emphasis added) *with* Subcomm. on Interpretation of R. of Civ. P., State Bar of Tex., Op., 8 TEX. B.J. 281, 281–82 (1945)[4] *and ASEP USA, Inc. v. Cole,* 199 S.W.3d 369, 378 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (concluding that trial court did not err in submitting to jury "apparently contradictory theories of breach of contract and promissory estoppel," in case in which charge instructed jury to answer promisso-

ry-estoppel question only if it had already answered "no" to prior breach-of-contract question).

## C. Discussion

Here, the questions were submitted separately, the second predicated on a particular answer to the first. Question Two was thus a conditional submission. Additionally, because Question Two was predicated on a negative answer to Question One—allowing the jury to answer one or the other of the claims affirmatively, but not both—the conditional submission of question two operated, in its effect, as a disjunctive submission of Turner's claims.[5] *See* Subcomm. on Interpretation of R. of Civ. P., State Bar of Tex., Op., 8 TEX. B.J. 281–82 (1945).

In his sole challenge on appeal, Turner argues that the trial court erred in charging the jury because the conditional submission of Question Two, predicated on a negative answer to question one, prevented him from properly presenting all of his theories of recovery. Specifically, Turner contends that, by conditioning a re-

---

4. The opinion provides, in relevant part:

Since [rule 277] provides that such [inconsistent] issues may be submitted disjunctively in one issue, the question is whether or not such issues may be disjunctively submitted in two issues, by a conditional submission of the second issue.

The result of such submission in one question or a conditional submission in two issues is the same, i.e., a disjunctive submission. Since Rule No. 1 provides that the rules should be given a liberal construction, it is the opinion of the committee that such disjunctive or conditional submission of the issues in two questions is permissible. To hold otherwise would be to violate the spirit of the rules, and give them a strict construction violating Rule No. 1.

Subcomm. on Interpretation of R. of Civ. P., State Bar of Tex., Op., 8 TEX. B.J. 281, 282 (1945). At the time of the opinion, rule 277 read, in pertinent part, "[I]f it be deemed advisable, the court may submit disjunctively

in the same question two inconsistent issues where it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists...." TEX.R. CIV. P. 277, 4 TEX. B.J. 173–74 (1941, amended 1973).

5. · Of course, the conditional submission here also allowed the jury to answer both questions in the negative, resulting in three possible, alternative dispositions of Turner's claims, rather than just two alternative dispositions: (1) liability on claim A only, (2) liability on claim B only, or (3) liability on neither claim A nor claim B. This was also true of the two-question special-issue submission that was sanctioned by the State Bar Subcommittee on Interpretation of the Rules of Civil Procedure. *See* Subcomm. on Interpretation of R. of Civ. P., State Bar of Tex., Op., 8 TEX. B.J. 281, 281–82 (1945).

sponse to the second question upon a negative response to the first, the jury could not consider (and potentially answer "yes" to) both causes of action simultaneously, which it should have been permitted to do.

### 1. The Instruction Was not Erroneous

■ Turner's wrongful-termination claim is based on *Sabine Pilot Service, Inc. v. Hauck*, in which the Texas Supreme Court, creating a narrow exception to at-will employment, declared that terminating an employee solely for his refusal to perform an illegal act violates public policy. 687 S.W.2d 733, 735 (Tex.1985). Under *Sabine Pilot*, "it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge *was for no reason other than* his refusal to perform an illegal act." *Id.* (emphasis added). Turner contends that the illegal act that he refused to perform was insurance fraud, which he argues his making a claim under Precision's health-insurance plan would have entailed because he would have had to lie about the circumstances of his injury. *See* TEX. PEN. CODE ANN. § 35.02(a)(1)(A)-(B), (2) (Vernon 2008) ("A person commits an offense if, with intent to defraud or deceive an insurer, the person, in support of a claim for payment under an insurance policy: (1) prepares or causes to be prepared a statement that: (A) the person knows contains false or misleading material information; and (B) is presented to an insurer; or (2) presents or causes to be presented to an insurer a statement that the person knows contains false or misleading material information.").

■ Turner's retaliatory-discharge claim is based on Texas Labor Code section 451.001, which provides that "[a] person may not discharge . . . an employee because the employee has: (1) filed a workers' compensation claim in good faith. . . ." TEX. LAB.CODE ANN. § 451.001(1) (Vernon 2006). "[T]o prove a 'retaliatory discharge' claim, the employee must show that the employer's action would not have occurred when it did had the employee's protected conduct—filing a workers' compensation claim—not occurred." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex.2005). That is, although "[t]he employee need not show he was fired solely because of filing the workers' compensation claim . . ., he must show that, *'but for' the filing of the claim*, the discharge would not have occurred when it did." *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 518 (Tex.App.–Houston [1st Dist.] 2006, pet. denied) (citations omitted, emphasis added).

Turner argues:

At first glance, these two separate prohibitions on termination would appear to be mutually exclusive since they both [sic] exclude other possible reasons for termination. However, in this case they are one [and] the same. *By filing for workers' compensation, Mr. Turner refused to commit insurance fraud.* There is evidence in the record supporting both theories of liability.

. . .

This testimony and evidence establishes facts supporting the elements of both *Sabine Pilot* and retaliatory discharge. What is unique about the facts supporting the causes of action in this case is that they are one [and] the same. Mr. Turner was fired for [filing for] workers' compensation and was fired about 60 hours after he did so. *By filing for workers' compensation he was refusing to commit insurance fraud (an illegal act) and was fired about 60 hours after he refused. In short, by filing for workers' compensation he was refusing to commit an illegal act.*

(emphasis added, citation omitted).

The problem with Turner's argument is that it focuses on how he conveyed his

refusal to do the illegal act, rather than on what the illegal act that he refused to do was or the fact of the refusal itself. The key is that the illegal act that he refused to commit was lying to the insurer, *i.e.*, insurance fraud. *Sabine Pilot* thus requires that Turner's firing have been solely for his refusal to perform that illegal act. In contrast, his retaliatory-discharge claim required that Turner show that, *because he filed a workers' compensation claim in good faith,* he was fired. *See* TEX. LAB. CODE ANN. § 451.001(1); *Green,* 199 S.W.3d at 518. If he was fired for the sole reason that he refused to lie to Precision's insurer, then he necessarily was not fired because he made a good-faith claim for workers' compensation benefits; conversely, if he was fired because he made a good-faith claim for workers' compensation benefits, then he could not have been fired for the sole reason that he refused to lie to Precision's insurer. This state of mutual

exclusivity exists regardless of whether Turner expressed his refusal to commit insurance fraud implicitly, by the filing of workers' compensation benefits, or expressly, by telling Precision that he refused to lie. Because the two claims are mutually exclusive on a legal basis under the facts of this case, the trial court had the discretion to submit the two claims to the jury disjunctively (although it did so in two questions, the second being conditioned on a negative answer to the first), to avoid possible confusion or potentially conflicting answers. *See Coulson,* 692 S.W.2d at 908 (indicating that trial court may submit, disjunctively, existence of two mutually exclusive propositions when conflicting answers are possible); *cf. Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991) (noting that claim for termination based on age discrimination is "mutually exclusive" with claim for wrongful discharge under *Sabine Pilot* ).[6]

**6.** Since deciding *Guthrie,* the Fifth Circuit Court of Appeals has consistently held that a plaintiff may not simultaneously plead a *Sabine Pilot* claim and other claims for improper termination. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991) (after affirming summary judgment rendered on age discrimination claim based on termination of employment, holding that *Sabine Pilot* claim was also properly dismissed because these two claims were mutually exclusive); *Pease v. Pakhoed Corp.,* 980 F.2d 995, 997 n. 1 (5th Cir.1993) (noting, in dictum, that "[u]nder Texas law, an employee who alleges wrongful discharge for refusing to perform a criminal act *cannot advance* additional claims") (emphasis added); *Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 952–53 (5th Cir. 1994) (considering case in which federal False Claims Act ("FCA") and *Sabine Pilot* claims for firing were submitted in two questions disjunctively, with latter claim predicated on negative answer to former, jury did not answer *Sabine Pilot* claim because it answered FCA claim affirmatively, trial court rendered judgment as matter of law that plaintiff take nothing on FCA claim, and trial court dismissed *Sabine Pilot* claim instead of

allowing jury determination on it, and holding—in affirming dismissal of *Sabine Pilot* claim—that plaintiff's asserting FCA claim precluded *Sabine Pilot* claim). Although this line of authority has been followed within the Fifth Circuit—*see Schutze v. Fin. Computer Software, LP,* Civ. No. 3:04–CV–0276–H, 2006 WL 2842008, at *7–8 (N.D.Tex. Sept. 29, 2006) (not designated for publication) *and Denson v. Meadwestvaco Corp.,* Civ. No. A. 3:04–CV–337–M, 2005 WL 2179116, at *7 (N.D.Tex. Sept. 8, 2005) (not designated for publication)—it has also been implicitly criticized therein for disallowing the pleading of inconsistent allegations. *See U.S. v. Columbia Healthcare Corp.,* Civ. No. A. H–98–861, 2005 WL 1924187, at *22 (S.D.Tex. Aug. 10, 2005) (not designated for publication) ("Binding Fifth Circuit authority [under *Guthrie, Pease,* and *Robertson* ], no matter how much this court disagrees with it, supports the dismissal of this [*Sabine Pilot* ] claim."); *see also* FED. R.CIV.P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Laurence v. Atzenhoffer Chevrolet,* 281 F.Supp.2d 898, 900 (S.D.Tex. 2003) (interpreting *Robertson* only to bar recovery for both of mutually exclusive claims

For these reasons, we hold that the trial court did not abuse its discretion in submitting the two questions as it did.[7]

## 2. Alternatively, Any Error Would Have Been Harmless

■ Alternatively, even if the trial court had erred by submitting the questions as it did, we hold that any such error would have been harmless.

Error in the charge is harmful, and thus reversible, only if it caused or was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment or if it prevented the appellant from properly presenting the case on appeal. TEX.R.APP. P. 44.1; E.B., 802 S.W.2d at 649; In re D.R., 177 S.W.3d 574, 581, 584 (Tex.App.–Houston [1st Dist.] 2005, pet. denied) (applying rule 44.1 to determination of harm in context of conditional submission of jury question). Because it is error for a trial court to refuse to submit a question when there is some evidence to support its submission, our sister court has explained the harm standard this way—albeit in a case not involving a disjunctive submission: "If [an improper] conditional submission deprives a party of the affirmative submission of an issue raised by the pleadings and evidence, such conditional submission also constitutes reversible error." Varme, 881 S.W.2d at 881.

---

of age discrimination and Sabine Pilot, but not to preclude pleading these inconsistent theories, reasoning that "parties can properly plead alternative, inconsistent theories of liability and can properly argue alternative claims to the jury"). We do not rely on the Guthrie court's holding that a party may not plead such inconsistent theories; indeed, the Texas Rules of Civil Procedure expressly allow parties to plead inconsistent claims alternatively, as Turner did here. See TEX.R. CIV. P. 48 ("A party may also state as many separate claims ... as he has regardless of consistency...."). Rather, we rely only on the Guthrie court's recognition that a Sabine Pilot claim is mutually exclusive with certain other claims, and we hold only that a trial court does not err in submitting such claims to the jury disjunctively.

7. Turner relies on In re D.R. and Varme v. Gordon to support his arguments that the trial court erred in submitting Question Two conditionally. In re D.R., 177 S.W.3d 574 (Tex. App.–Houston [1st Dist.] 2005, pet. denied); Varme, 881 S.W.2d 877 (Tex.App.–Houston [14th Dist.] 1994, writ denied). We distinguish these cases. In In re D.R., a jury question permitting the jury to appoint the father managing conservator of his child was made contingent upon a negative answer to an earlier question asking if a history or pattern of family violence existed in the home. In re D.R., 177 S.W.3d at 578–79. The jury skipped the question allowing the father to be appointed conservator because it answered "yes" to the predicate question. Id. at 579. This Court held that predicating the managing-conservatorship question upon a negative answer to the family-violence question was error because the conservatorship statute did not automatically preclude the appointment of a parent as managing conservator upon the showing of a history or pattern of family violence. Id. at 582. In Varme, the jury charge predicated a fraudulent-inducement question on an affirmative answer to either a tortious-interference question or a conspiracy question. Id., 881 S.W.2d at 880. The Varme court held that this contingent submission was erroneous because the elements of conspiracy, tortious interference, and fraudulent inducement are different and because each claim constitutes a separate theory of recovery that is independent of the others. Id. at 881. The problem presented in Varme was that the trial court's instruction made a theory of recovery contingent upon an affirmative answer to other claims on which it was not legally or factually contingent. Here, in contrast, the trial court submitted disjunctively a ground of recovery that, as a matter of law, is mutually exclusive with another ground of recovery in a situation that could lead to conflicting answers or confusion without the disjunctive instruction. This the law allows. See Select Ins. Co. v. Boucher, 561 S.W.2d 474, 476 (Tex.1978); Lake LBJ Mun. Util. Dist. v. Coulson, 692 S.W.2d 897, 908 (Tex. App.–Austin 1985), rev'd on other grounds, 734 S.W.2d 649 (Tex.1987); see also Parker, 540 S.W.2d at 831.

There were three possible outcomes that could have resulted, in the abstract, from the trial court's conditional, disjunctive submission of Question Two:

1. The jury could have answered "No" to Question One and "Yes" to Question Two, finding liability only for Turner's retaliatory-discharge cause of action;

2. The jury could have answered "No" to Question One and "No" to Question Two, offering Turner no relief whatsoever; or

3. The jury could have answered "Yes" to Question One (finding liability for Turner's *Sabine Pilot* cause of action) and, thus, it would not have been permitted to answer Question Two.

In the abstract, the first two outcomes would have allowed the jury to consider both theories of recovery. Again in the abstract, either the first or third outcome would have given Turner actual relief on one cause of action, but not on both. The only outcome not permitted by the conditionally worded charge was a "Yes" answer to both questions.

The second outcome is what actually occurred. At trial, the jury considered both questions and answered both in the negative. On appeal, Turner's contention is that the jury should have been allowed to consider both questions so that it would have had the opportunity to answer "Yes" to the first question and "Yes" to the second (the only combination of answers not allowed by the charge as given). This argument presents only theoretical, not actual, harm. The jury *did* consider both questions: it considered them both—as its negative answer to the first question allowed it to do—and then rejected them both. The instruction thus did not in any way prevent the jury from considering both of Turner's claims.

We hold that, because the jury considered both theories of recovery and rejected each, any possible error in the challenged instruction would not have caused the rendition of an improper judgment or have prevented Turner from properly presenting his case on appeal. *See* Tex.R.App. P. 44.1. Put another way, the conditional submission of Question Two, even if it had been error, would not have been reversible error because it would not have deprived Turner of the affirmative submission of an issue (his claim for retaliatory discharge) raised by the pleadings and the evidence. *See Varme*, 881 S.W.2d at 881. Therefore, we hold that even if the trial court had erred in submitting Turner's claims conditionally, any such error would have been harmless, requiring us to overrule Turner's sole issue on that independent basis.[8]

## Conclusion

We affirm the judgment of the trial court.

8. We again distinguish *In re D.R.* and *Varme*, on which Turner relies to show harm. In *In re D.R.*, the jury answered "yes" to the predicate questions and thus did not reach the question that the appellant contended should not have been submitted conditionally. *Id.* at 578–79. We held that the improper conditioning precluded the jury "from even considering whether [the appellant] should have been appointed as D.R.'s managing conserva-tor." *Id.* at 584. Likewise, in *Varme*, because of the trial court's conditional submission of distinct claims, the appellant was "denied proper submission of a valid theory of recovery raised by the pleadings and evidence," rendering the error harmful. *Varme*, 881 S.W.2d at 882. Here, in contrast, given its answers, the jury was not prevented from considering either claim.