# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00129-CV

---

**Appellant, Leonard Gary Cylear// Cross-Appellant, Rita A. Johnson-Cylear**

**v.**

**Appellee, Rita A. Johnson-Cylear// Cross-Appellee, Leonard Gary Cylear**

---

**FROM THE 480TH DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 23-0358-F480, THE HONORABLE TERENCE M. DAVIS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Leonard Gary Cylear appeals from the trial court's final divorce decree dividing his and Rita A. Johnson-Cylear's marital estate. Rita[1] also filed a cross-appeal challenging the trial court's denial of her request that Leonard be ordered to reimburse the community estate due to his constructive fraud. We will affirm the challenged portions of the final divorce decree.

## BACKGROUND

Leonard and Rita married in January 2015 and separated in May 2021. In February 2023, Leonard filed a petition for divorce based on insupportability.[2] Rita filed a counter-petition seeking a divorce based on insupportability and abandonment and sought a

---

[1] Because the parties share a surname, we refer to them by their given names for clarity.

[2] Leonard later amended his petition to assert as additional grounds for divorce drug use, abandonment of the marriage, emotional abuse, intentional infliction of emotional distress, and neglect of the marriage and sought a disproportionate share of the marital estate.

disproportionate share of the marital estate. In January 2024, Rita filed a motion for temporary orders including orders that the marital residence located at 112 Camp Verde Drive in Georgetown (the Camp Verde Property) be listed for sale and that Rita and Leonard execute "any documents necessary to put the marital residence on the market and to effectuate the sale of the property." After a hearing,[3] the court signed an order that included the following:

> The Court **FINDS** the following:
>
> 1. IT IS ORDERED that the marital residence shall be listed for sale with the realtor Kimberly Wolfman.
>
> 2. IT IS ORDERED that each party shall execute any documents necessary to put the marital residence on the market and to effectuate the sale of the property.

The court also ordered that Rita and Leonard "shall each be responsible for paying half of the monthly mortgage payment for the marital residence" and that Rita "shall have exclusive use of the marital residence."

In June 2024, Leonard filed a request for a jury trial. In December 2024, Rita filed an amended counterpetition for divorce and included a request for a temporary order giving her exclusive use and possession of the Camp Verde Property while the divorce proceeding was pending and enjoining Leonard from entering or remaining on the Camp Verde Property.

In January 2025, the court conducted a two-day jury trial. The jury found that the divorce should be granted without regard to fault; determined what percentage of several assets of the marital estate, consisting of financial accounts and a vehicle, were separate or community

---

[3] The appellate record does not include a reporter's record of this hearing.

property; found that Leonard's separate estate conferred a benefit on the community estate in the amount of $105,606.02; found that Leonard's separate estate conferred a benefit on Rita's separate estate in the amount of $12,000; failed to find that Leonard committed actual fraud with respect to Rita's community-property rights; found that Leonard's transfers, gifts, or expenditures of community property were fair; and found that the amount of Leonard's transfers, gifts or expenditures of community property was $347,000. The jury also found that a reasonable fee for the services of Leonard's attorney and Rita's attorney was $67,043 and $119,902.26, respectively. The remaining issues, including the division of the community estate's real property, were tried to the bench. In February 2025, the court rendered a final decree of divorce and filed findings of fact and conclusions of law.

Both Rita and Leonard filed notices of appeal. Leonard also filed a document titled "Petitioner's Formal Bill of Exceptions" in which he stated his objection to the court's awarding the Camp Verde Property to Rita. Leonard asserted that, during the divorce proceedings, the parties had executed an Agreement Incident to Divorce that included an agreement to sell the Camp Verde Property. *See* Tex. Fam. Code § 7.006 (providing that spouses may enter into written agreement concerning division of property, which may be revised or repudiated before rendition of divorce unless binding under another rule of law). Leonard argued that the agreement was binding because the parties had, in February 2024, executed a Residential Real Estate Listing Agreement giving Wolf Real Estate the exclusive right to sell the Camp Verde Property for a term beginning on October 20, 2023 and ending on December 31, 2024.

**DISCUSSION**

***Leonard's Appeal***

In his first issue, Leonard asserts that the trial court erred in awarding Rita the Camp Verde Property in contravention of what he contends was a binding Agreement Incident to Divorce whereby he and Rita agreed that the Camp Verde Property would be sold. *See* Tex. Fam. Code § 7.006 (governing agreements incident to divorce). As an initial matter, the record does not include a written agreement entered into by Leonard and Rita regarding disposition of the Camp Verde Property. Leonard relies on a document titled "Rule 11 Agreement" that he filed with the court as an attachment to his post-judgment request for findings of fact and conclusions of law and to his "Formal Bill of Exceptions." This document, however, does not bear either Leonard's or Rita's signature. The parties may, however, satisfy the written agreement requirement by stating the agreement in open court and making it part of the record. *See Clanin v. Clanin*, 918 S.W.2d 673, 676-77 (Tex. App.—Fort Worth 1996, no writ) (holding that compliance with "open court and entered of record" portion of Rule 11 of the Texas Rules of Civil Procedure satisfies section 7.006 requirement of written agreement in divorce cases); *see also* Tex. R. Civ. P. 11 (providing that agreement between parties to suit can be enforced if it is in writing and filed with court or "made in open court and entered of record"). Leonard asserts that the parties announced their agreement on the record during a hearing before the court. The appellate record, however, does not include a reporter's record or transcript of that hearing. Moreover, section 7.006 expressly provides that an agreement incident to divorce may be revised or repudiated before rendition of the divorce unless it is binding "under another rule of law." By setting the case for a contested hearing on the division of the marital estate, including the Camp

4

Verde Property, the parties effectively repudiated any asserted agreement regarding the disposition of the Camp Verde Property.

On appeal, Leonard maintains that their alleged agreement to sell the Camp Verde Property is binding for two reasons. First, Leonard states that the trial court found the agreement to sell the Camp Verde Property to be "just and right" and, therefore, its terms are binding on the court. *See id.* § 7.006(b) ("If the court finds that the terms of the written agreement in a divorce or an annulment are just and right, those terms are binding on the court."). Leonard points to the court's January 24, 2024 order on Rita's second amended motion for temporary orders in which it recites a finding that "the marital residence shall be listed for sale with the realtor Kimberly Wolfman" and that "each party shall execute any documents necessary to put the marital residence on the market and to effectuate the sale." Leonard asserts that this order constitutes a finding by the court that their agreement to sell the Camp Verde Property is "just and right," thereby preventing the court from awarding the property to Rita in the final divorce decree. The temporary orders do not, however, include a finding that any agreement to sell the Camp Verde Property is "just and right" or otherwise bind the trial court or require it to make a certain disposition of marital property in its final divorce decree. The temporary orders simply order the parties to "list" the property for sale and execute documents necessary to effectuate any sale resulting from that listing. There is no evidence in the record that any offer to purchase the Camp Verde Property was made or that the property was ever under a contract for sale.

Second, Leonard claims that the agreement to sell the Camp Verde Property was binding because he signed a Residential Real Estate Listing Agreement giving Wolf Real Estate the exclusive right to sell the Camp Verde Property. But that agreement simply gave Wolf Real Estate the right to list the Camp Verde Property for sale for a time period that expired on

5

December 31, 2024. This listing agreement did not serve to make any agreement by Leonard and Rita to sell the Camp Verde Property "binding under another rule of law" as required to prohibit Rita from repudiating such agreement before rendition of the final divorce decree. *See id.* § 7.006(a) ("The agreement may be revised or repudiated before rendition of the divorce or annulment unless the agreement is binding under another rule of law.").

Moreover, rather than require the court to dispose of marital property in a manner consistent with the parties' agreement, section 7.006 provides that the court may find that "the terms of the written agreement are just and right," approve the agreement, and "set forth the agreement in full or incorporate the agreement by reference in the final decree." *Id.* § 7.006(b). Alternatively, the court may find that the terms of the written agreement are not just and right, in which case it may request that the spouses submit a revised agreement or set the case for a contested hearing. *Id.* § 7.006(c). Thus, even had Leonard and Rita in fact entered into a section 7.006 Agreement Incident to Divorce, the court had the discretion to set the case for a contested hearing and divide the marital property in a manner it found to be just and right, including awarding the Camp Verde Property to Rita. We overrule Leonard's first issue.

In his second issue, Leonard asserts that the trial court erred by divesting him of separate property, which may not be divided in a divorce. *See Boyd v. Boyd*, 67 S.W.3d 398, 406 (Tex. App.—Fort Worth 2002, no pet.) (only community property is subject to trial court's just and right division and court has no discretion to divest spouse of his separate property). Specifically, Leonard complains that the trial court awarded Rita his separate property by awarding her 100% of the Lockheed Salaried Savings Plan X0563-01, despite the jury's having found that 36% of that account constituted his separate property. Initially, we note that the record does not show that Leonard raised this issue in the trial court or in a motion for new trial

6

or otherwise brought it to the trial court's attention. Preservation of a complaint is a prerequisite for appellate court review. Tex. R. App. P. 33.1(a). To preserve error for appeal, a party must make a timely, specific objection or motion to the trial court that states the grounds for the desired ruling with sufficient specificity and complies with the rules of evidence or procedure. *Kerr-McGee Corp. v. Helton*, 133 S.W.3d 245, 251 (Tex. 2004). Leonard failed to make this complaint in the trial court. The only complaint Leonard made about the award of this account was in his objection to the trial court's findings of fact and conclusions of law, which he argued were "not responsive to" specific requests for findings of fact and conclusions of law that he presented to the court and requested that the court "state the specific facts relied upon by the Court in concluding that the award of 100% of the Lockheed Salaried Savings Plan X0563-01 and X3523 ($36,906.91), acquired as a result of Petitioner's employment and in Petitioner's name, to Respondent is a just and right division of the community estate." This objection to the court's findings and conclusions does not make any reference to a divestiture of Leonard's separate property or of a conversion of his separate property into community property. At most, the objection raises a complaint that the court's determination that 100% of the account should be awarded to Rita was not a "just and right" division of the *community* estate.

Moreover, even if preserved, Leonard's complaint on appeal that the trial court erred in awarding this account to Rita because "the jury had determined that 36% of the account constituted appellant's separate property" is not consistent with the record. At trial, the jury found that an account referred to as "Lockheed Martin Savings #3523" was 60% Leonard's

7

separate property and 40% community property.[4]  The account the jury was questioned about was an account identified in Leonard's inventory of property acquired "Prior to Marriage" as the "Lockheed Martin Corporation Operations Support Plan" with plan number 0563-04 and a "Started" date of 2008, before his marriage to Rita.[5]  Exhibits admitted at trial identify this account as being Plan 0563-04.  Based on the jury's finding, the court, in its final divorce decree, confirmed that "60% of the Lockheed Martin Savings Account #3523 [0563-04] in the name of Petitioner as of January 8, 2025 along with any increases or decreases since that date" was Leonard's separate property.  In its division of community property, the court awarded Leonard "100% of Lockheed Operation Support Savings x0563-04."  In its findings of fact, the court stated:

> The Lockheed Operations Support Savings Plan Account ending in XX0563-04 had a total value of $113,519.  60% was held to be [Leonard's] separate property which would have been $68,111 and the remaining amount of $45,408 was community property and that 100% of the community portion was awarded to Leonard.

---

[4]  Exhibits admitted into evidence at trial indicate that the number "3523" refers to Leonard's identification number for all of his Lockheed Martin plans and that the numbers "0563-01," "0563-03," and "0563-04" are the individual plan numbers.

[5]  In his inventory, Leonard included plan numbers 0563-01 and 0563-03 in his list of property acquired "During Marriage" and included "Started" dates for the plans as September 2022 and January 2023, respectively.  These "start" dates are during Leonard and Rita's marriage.

Thus, rather than divest Leonard of his 60% separate property portion of this account, the court awarded Leonard the entire account, including the 40% of the account that the jury found was community property.[6] We overrule Leonard's second issue.

In his third issue, Leonard asserts that the trial court erred by awarding Rita a disproportionate share of the community estate despite the jury's finding that the divorce should be granted "without regard to fault." Leonard maintains that by doing so, the trial court abused its discretion. We disagree.

In a divorce decree, the trial court shall order a division of the community property of the parties in a manner that the court deems just and right, having due regard for the right of each party and any children of the marriage. Tex. Fam. Code § 7.001. We review a trial court's division of community property for an abuse of discretion. *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex. 1976). An abuse of discretion occurs where a division of community property is manifestly unfair. *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). A property division need not be equal and may take into consideration many factors, such as the spouses' respective abilities, benefits that the party not at fault (if applicable) would have derived from a continuation of the marriage, business opportunities, education, relative physical condition relative financial condition and obligations, disparity in age, size of separate estates, the nature of the property, and disparity in income and earning capacity (the "*Murff* factors"). *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). A trial court is presumed to have properly exercised its discretion in applying these factors, and a property division will be reversed on appeal only when an abuse of discretion has been shown. *Id.* at 698.

---

[6] The court awarded Rita 100% of the other two Lockheed accounts—0563-01 and 0563-03—which Leonard had included in his inventory of property acquired during the marriage and were thereby represented to the court as being 100% community property.

9

On appeal, rather than discuss the *Murff* factors to demonstrate that the trial court abused its discretion, Leonard simply asserts that the trial court's property division disproportionately favored Rita despite the jury's finding that the divorce should be granted "without regard to fault." Here, the trial court made the following finding:

> [Rita] was awarded a disproportionate division of the community estate for the reasons raised in her Amended Counterpetition for Divorce filed 12/20/24, including but not limited to fault in break up and disparity in earnings. The Court also considered the increased attorney's fees incurred by [Rita] as a result of [Leonard] and [Leonard's] counsel's conduct during the proceeding that increased fees in this case.

Thus, the court included fault in the breakup of the marriage as one of the factors supporting awarding Rita a disproportionate share of the marital estate. Even in the context of a no-fault divorce, appellate courts, including this one, have acknowledged that fault may be considered in making the property division. *See Paez v. Rodriguez*, No. 03-24-00731-CV, 2025 WL 2325163, at *3 (Tex. App.—Austin Aug. 13, 2025, no pet.) (mem. op.) ("[A]lthough the trial court granted the divorce on no-fault grounds, [in dividing the parties' community estate,] it could still consider Edith's testimony concerning the physical and emotional abuse she observed in her parents' marriage."); *Cyree v. Cyree*, No. 03-21-00319-CV, 2022 WL 17835215, at *4 (Tex. App.—Austin Dec. 22, 2022, no pet.) (mem. op.) ("That the trial court granted the parties a no-fault divorce, however, is not inconsistent with and did not preclude it from considering William's admitted extramarital affair in its division of the marital estate."); *Mohindra v. Mohindra*, No. 14-06-00056-CV, 2007 WL 3072057, at *2 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) (rejecting argument that because trial court granted divorce without regard to fault, court could not consider any fault on husband's part in division of

community estate and collecting cases including *In re Brown*, 187 S.W.3d 143, 146 (Tex. App.—Waco 2006, no pet.) (holding that trial court had discretion to consider proven fault in breakup of marriage sought solely on grounds of insupportability) and *Bishop v. Bishop*, No. 14-02-00132-CV, 2003 WL 21229476, at *3 (Tex. App.—Houston [14th Dist.] May 29, 2003, no pet.) (mem. op.) (stating that it was within trial court's discretion to consider fault in dividing the parties' community estate even when no-fault divorce is granted)). Leonard has failed to demonstrate that the trial court abused its discretion by awarding a disproportionate share of the marital estate to Rita. We overrule his third issue.

In his brief, Leonard includes a fourth appellate issue stating that the trial court erred by denying a "Motion to Vacate and Set Aside the court order entered October 16, 2024, as it was based on the order entered August 20, 2024, without notice and ex parte in violation of TRCP 21." The brief, however, does not include any argument supporting this assertion. Other than setting forth the issue at the beginning of the brief, the brief does not include any further mention of this issue. The brief of this issue fails to comply with the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record). Leonard's brief fails to adhere to Rule 38.1's minimum requirements. *See, e.g.*, *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.) ("Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support his contention."); *Urquhart v. Marsaw*, No. 05-19-00855-CV, 2020 WL 3046202, at *1 (Tex. App.—Dallas June 8, 2020, no pet.) (mem. op.) ("Adequate briefing relevant to the issues is minimally required for this Court to review the proceedings below."). Inadequate briefing

11

presents nothing for this court to review. *See Urquhart*, 2020 WL 3046202, at *1 ("Here, appellant's brief fails to meet the minimum requirements of rule 38.1. As such, nothing is preserved for our review."). We overrule Leonard's fourth issue.

***Rita's Appeal***

In her sole appellate issue, Rita asserts that the trial court erred in disregarding a jury finding related to her claim for constructive fraud. The jury answered the constructive fraud questions as follows:

CONSTRUCTIVE FRAUD

A spouse may make moderate gifts, transfers, or expenditures of community property for just causes to a third party. However, a gift, transfer, or expenditure of community property that is capricious, excessive or arbitrary is unfair to the other spouse. Factors to be considered in determining the fairness of a gift or transfer, or expenditure are:

1. The relationship between the spouse making the gift, transfer, or expenditure and the recipient.

2. Whether there were any special circumstances tending to justify the gift, transfer, or expenditure.

3. Whether the community funds used for the gift, transfer, or expenditure were reasonable in proportion to the community estate remaining.

QUESTION 9:

Were the transfers, gifts, or expenditures by Leonard Cylear fair?

Answer "Yes" or "No"

12

Answer:   YES

If you answered "No" to Question 9, then answer Question 10.  Otherwise, do not answer Question #10.

QUESTION 10:

State in dollars the value, if any, by which the community estate was depleted as a result of the transfers, gifts, or expenditures of Leonard Cylear.

Answer:   347,000.00

Thus, despite being instructed not to answer Question 10 if they answered Question 9 in the affirmative, the jury improperly answered Question 10.  Rita maintains that this presents a conflict in jury findings; that no party objected to the conflicting findings before the jury was discharged; and consequently, the jury's finding that Leonard depleted the estate in the amount of $347,000 could not be disregarded and required the court to award her that amount on her constructive fraud claim.  We disagree.

A jury question is conditionally submitted when the jury is instructed to answer a question contingent on its answer to a prior question, whether the predicate answer is in the affirmative or in the negative.  *Turner v. Precision Surgical, L.L.C.*, 274 S.W.3d 245, 249 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  Texas Rule of Civil Procedure 277 permits the trial court to predicate damage questions on affirmative findings of liability.  Tex. R. Civ. P. 277.  "It is well settled that when jury questions are conditioned upon an affirmative answer to a prior question, a negative answer to the preceding question renders all subsequent findings either improper, immaterial or devoid of legal consequence."  *American Recreational Markets Gen. Agency, Inc. v. Hawkins*, 846 S.W.2d 476, 478 (Tex. App.—Houston [14th Dist.] 1993, no pet.).

13

In this case, the requisite of the conditional submission of Question 10—a negative answer to Question 9—was not met, and the jury's answer to Question 10 was properly disregarded by the court as a mere voluntary finding. The jury's answer to Question 10 was immaterial and, therefore, could not create a conflict between jury answers. *See Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 863 (Tex. App.—Austin 2001, pet. denied) (improperly answered conditional jury question is either improper, immaterial, or devoid of legal significance). We overrule Rita's sole appellate issue.

## CONCLUSION

Having overruled each of Leonard's and Rita's appellate issues, we affirm the challenged portions of the trial court's final decree of divorce.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Affirmed

Filed: May 14, 2026

14